John A. Wright and Joseph T. Wright, Individually, and Doing Business as Princeton Company, Plaintiffs-Appellees, v. Douglas Furniture Corporation, a Corporation, Defendant-Appellant.

Gen. No. 51,291.

First District.

June 24, 1968.

Rehearing denied August 14, 1968.

Freeman, Freeman & Haas, of Chicago (Kernal Freeman and Marvin G. Freeman, of counsel), for appellant.

Frank J. Wiedner and John P. McAuliffe, of Chicago (William J. Harte, of counsel), for appellees.

EBERSPACHER, P. J.

This action was brought by the plaintiffs to recover rentals allegedly due by virtue of a vehicle lease agreement wherein the plaintiffs leased three trucks to the defendant. The case was heard without a jury which culminated in the court entering a judgment against the defendant and assessing damages in the sum of $12,854. The defendant appeals from this judgment.

The salient facts are undisputed. On December 28, 1960, the plaintiffs, John A. Wright and Joseph T. Wright, doing business as Princeton Company, and the defendant, Douglas Furniture Corporation, entered into a vehicle lease agreement. Joseph T. Wright signed the agreement in behalf of the plaintiffs. Under the terms of the agreement the plaintiffs were to provide the defendant with three 1961 Ford Vans at a monthly rental rate of $222 per van for a period of six years, from December 28, 1960, to December 28, 1966.

Paragraph 1(b) and 3(b), (c) of the agreement provide as follows:

1. Lessor agrees with respect to each leased motor vehicle, to:

 (a). . . .
 (b). Pay for all service, repairs and replacements for which Lessee is not required to pay by any other term or provision of this agreement.

3. It is further mutually agreed as follows:

 (a). . . .
 (b). With respect to each said motor vehicle:

 (i) Lessee shall pay for any lubrication and oil changes not less frequently than every 2,000 miles.

(ii) Lessee shall pay for gasoline, oil added between changes and permanent antifreeze required for the operation and protection of the automobile.

(iii) Lessee shall pay for tire repairs.

(iv) Lessor shall pay all taxes, license, registration and other fees as may be required by any governmental authority.

(c). Any and all service, repairs, replacements and supplies shall be performed or supplied by such person as Lessor shall determine and Lessee shall pay for any and all service, repairs, replacements and supplies performed or supplied by other persons.

According to evidence offered by the defendant, the plaintiffs designated the J. J. Wright Motor Co., another company owned and operated by the plaintiffs, as the garage to provide the maintenance of the vehicles. In rebuttal to this testimony Joseph T. Wright, one of the plaintiffs, testified that he might have suggested to the defendant that they have their trucks repaired at J. J. Wright Motor Co. in that he would ultimately benefit because he was a shareholder in that corporation but he further testified that he was not authorized to direct the defendant as to a specific place to maintain their trucks.

By any means the defendant had the trucks serviced at the J. J. Wright Motor Co. from the inception of the contract until August of 1963. Also, from the inception of the contract on December 28, 1960 until August of 1963, the defendant paid the full rental as provided in the contract. Then by letter dated August 29, 1963, the defendant advised the plaintiffs that they wished to discuss certain "contract violations" including "your failure to provide full maintenance of the vehicles as provided in paragraph 1(b) and 3(c). . . ." Later by a

check dated September 5, 1963, the defendant paid the August rent. The check was in the amount of $82.56 which equalled the balance of the $666 rental minus four repair bills which totaled $583.44. Invoices evidencing those repairs were attached to the check. The first is dated 10–18–61 in the amount of $18.13; the second is dated 11–14–61 in the amount of $35.98; the third is dated 6–21–63 in the amount of $219.06; and the fourth is dated 2–25–63 in the amount of $310.27. All of the invoices were from the J. J. Wright Motor Co.

Upon receipt of the check and invoices, the plaintiffs advised the defendant that they would not pay for any repairs to the trucks. The plaintiffs' attorney by letter dated October 2, 1963, advised the defendant to the same effect, and directed that all repairs were to be made by the J. J. Wright Motor Company.

On October 30, 1963, the defendant informed the plaintiffs by letter of termination of the lease agreement "by reason of your failure to honor our deductions for payments made to J. J. Wright Motor Company." According to plaintiffs' testimony the parties had been at an impasse with reference to who was to pay for repairs during August and September.

The defendant then sought to return the trucks but the plaintiffs advised the defendant that they would not accept them. In response to this, the defendant drained the radiators of the trucks, parked them on their parking lot and advised the plaintiffs that they were holding the keys for their convenience. Thereafter the defendant entered into another leasing agreement with a different truck leasing organization.

The plaintiffs brought suit for damages for the rental due from August 1963. During the pendency of this action at the suggestion of the court and by agreement of the parties, the trucks were sold in July 1964, "the purpose being in aid to possible mitigation of damages."

140

The court found in favor of the plaintiffs and entered judgment against the defendant in the amount of $12,854. The court arrived at this amount by multiplying the rental ($666) by 29 months, which equalled $19,314. From this figure the court deducted the initial rental deposit of $666, the value of the three truck chassis of $4,200 and the value of the two truck bodies which were sold for $1,600.[1] Even assuming plaintiffs were entitled to recover damages, we are unable to follow the court's determination of damages in view of the fact that the vehicles were sold in July 1964, which terminated lessors' obligations for taxes, licenses, insurance and replacement of the chassis after 36 months on each of the 3 vehicles.

In reaching the decision the court stated that when the plaintiffs proved their vehicle lease agreement and the discontinuance of rent by the defendant in September of 1963 the plaintiffs established a prima facie case. The court further stated that it was of the opinion that the defendant had failed to sustain the burden of coming forward with evidence of a substantial nature which showed a failure of consideration on the part of the plaintiffs to provide the type of services that the defendant contended it was entitled to.

The issues as we see them are which party to the Vehicle Lease Agreement was obligated to pay for the maintenance of the trucks and that if it were the plaintiffs' obligation did refusal constitute a material breach of the contract.

■ In our opinion it is evident that the lessor had the obligation to pay for service, repairs, replacements and supplies so long as the lessee defendant brought the trucks to such person as the plaintiffs designated. Paragraph 1(b) of the agreement provides that the lessor

---

[1] Under the trial court's theory the judgment should have been for $12,848.

(plaintiffs) shall pay for all service, repairs and replacements unless otherwise provided by other provisions of the agreement. Paragraph 3(b) and particularly (i), (ii) and (iii) of paragraph 3(b) obligate the lessee to pay for for specific costs and repairs and is in harmony with the last phrase of paragraph 1(b). By the same token there is nothing inconsistent with paragraph 3(b) of the agreement. This paragraph merely provides that the lessor shall have the prerogative of choosing who shall provide the maintenance of the vehicles and that if the lessee does not abide by this determination the lessee shall become obligated to pay the costs of maintenance.

By the provisions of Paragraph 3(i) of the Vehicle Lease Agreement,[2] the lessee defendant is barred from maintaining a suit for damages against the lessors in view of the exculpatory clause relieving the lessors of liability for failure to furnish or authorize repairs. To avoid the liability of providing for the service, repairs and replacements for the leased vehicles all lessors had to do was withhold the authorization or making of repairs. It follows that if defendant could not maintain an action for damages, defendant's only recourse was to terminate the contract, which was done in this case.

The evidence further establishes that the plaintiffs designated the J. J. Wright Motor Co. as the authorized garage to provide maintenance. The evidence of the defendant was that Joseph T. Wright, a partner of the plaintiffs, made the designation. Mr. Wright did not deny the testimony but testified that he did not have the authority to make the designation. It seems anomalous

---

[2] Which is as follows: "Lessor shall not be liable for any loss, expense or damage on account of Lessor's failure or delay in furnishing any vehicle or substituted vehicle hereunder, or in furnishing or authorizing any service or repairs thereto, or by reason of defect or breakdown of any vehicle leased hereunder."

that Mr. Wright, as a partner in Princeton Company, could enter into the agreement on behalf of the Princeton Company but as such partner could not make a designation as provided by one of the terms of the agreement. We also note that the reason given by the plaintiffs in their correspondence of October 2, 1963 to defendant, in refusing the deductions from the rental check was not that defendant had failed to take the trucks to the designated garage but that they were not obligated to pay for them under the terms of the agreement.

Thus, having resolved the first issue in favor of the defendant, we reach the second issue of whether the breach of the plaintiffs was of such a nature as to warrant the subsequent action of the defendant.

█ It is established that a party may terminate a contract because of substantial nonperformance or breach by the other party. Sampson v. Mano, 343 Ill App 245, 98 NE2d 523(1951), 17 CJS, § 422; Atwell Printing & Binding Co. v. Prairie Farmer Pub. Co., 246 Ill App 100. The issue to be determined is whether the breach of the contract is so substantial and fundamental as to defeat the objects of the parties in making the agreement, or whether failure to perform renders performance of the rest of the contract different in substance from the original agreement. Unique Watch Crystal Co., Inc. v. Kotler, 344 Ill App 54, 99 NE2d 728 (1951), and cases cited therein.

The fact that the bills presented with the check dated September 5, 1963 were the only bills presented, and that defendant had on prior occasions paid some bills amounting to less that $200 which it did not attempt to get plaintiffs to pay, we consider of no evidentiary value. The Agreement, as to who was to pay for repairs made by the authorized garage, is clear and concise, and furthermore the contract specifically provided, by Paragraph

3 (m), that such failures to present bills would not operate as a waiver.[3]

■ In the instant case it is the opinion of this Court that the obligation of the plaintiffs to pay for services, repairs and replacements of the leased trucks constituted a material part of the lease agreement and that the plaintiffs' breach of that obligation was a substantial breach. A considerable portion of the agreement was devoted to the obligation of repairs and the exceptions. The prime obligation was assumed by the plaintiffs as lessor. The exceptions of gasoline, oil, lubrication and tire repairs were assumed by the defendant lessee. The agreement was for a period of 6 years.

Since the leased vehicles were new at the execution of the agreement, the cost of repairs would be minor in the early months of the agreement, but increase substantially during the last half of the six-year lease; as to who would furnish them would be one of the major considerations of the agreement. This is particularly true since the agreement specifically provided that there was no limitation on mileage; by plaintiffs' testimony the motor needed to be replaced on one of the vehicles in less than one-half the lease period. That both parties anticipated hard usage is evidenced by the provisions of the schedules for replacement of each of the chassis after 36 months' use. Defendant had chosen to lease rather than buy in the first instance, and the parties were seeking a profitable and economical venture, respectively. In determining whether the lease agreement would be profitable to the plaintiffs and economical to the defendant, a prime consideration for each party would be the question of who would bear the expense of repairs. Obviously, plaintiffs' failure to make repairs would render the performance of the remainder of the agree-

---

[3] Paragraph 3(m) states: "Neither failure nor delay on the part of Lessor and or Lessee in exercising any right, power or privilege hereunder . . . shall operate as a waiver thereof. . . ."

ment different in substance than that which defendant contracted for; plaintiffs' failure to perform defeats the object of the contract. Under such circumstances, defendant may terminate the contract. After plaintiffs' numerous refusals to honor the repair bills and repeated statements that they would not pay for future repairs, and since defendant could not recover damages for plaintiffs' nonperformance by virtue of the exculpatory clause in the agreement, defendant was justified in termination of the agreement.

> "It may seem hard to hold that the plaintiff failed, and that the defendant was within its legal rights, when it cancelled the contract, but in business matters when the parties have seen fit to prescribe their relations in writing, the Court is bound by the law to apply to their conduct the rules which they themselves have formulated." Atwell Printing Co. v. Prairie Farmer Pub. Co., supra.

We are reminded by the plaintiffs that in order to reach the decision that we do we must hold that the trial court's findings are palpably wrong or manifestly erroneous. Inter-Insurance Exchange of Chicago Motor Club v. Travelers Indemnity Co., 57 Ill App2d 17, 206 NE2d 518 (1965). However, as set forth above, the contract in question is clear and unambiguous. From the uncontroverted evidence it is our opinion that the plaintiffs have breached the contract and that their breach was substantial. It is our further opinion and holding that the judgment of the trial court was manifestly erroneous.

For these reasons the judgment of the court below is reversed.

Reversed.

GOLDENHERSH and MORAN, JJ., concur.