**John M. KING, Plaintiff-Appellee and Plaintiff-Appellant,**

v.

**Ben T. STEVENSON, Defendant-Appellant and Defendant-Appellee.**

**Nos. 18027, 18028, 18195.**

United States Court of Appeals, Seventh Circuit.

June 21, 1971.

---

10. 32 C.F.R. § 1622.30(b).

Jr., Chicago, Ill., for John M. King; Peterson, Lowry, Rall, Barber & Ross, Chicago, Ill., of counsel.

Walter E. Wiles, Edward J. Wendrow, Calvin Sawyier, Brian A. Loftus, Chicago, Ill., for defendant-appellant; Winston, Strawn, Smith & Patterson, Wiles, Johnson & Barrington, Chicago, Ill., of counsel.

Before MAJOR, Senior Circuit Judge, and FAIRCHILD and CUMMINGS, Circuit Judges.

CUMMINGS, Circuit Judge.

The principal question presented by these consolidated appeals concerns the validity of a February 16, 1966, appraisal of the market value of King Resources Company common stock at $16 per share as of November 21, 1965.

In 1955, John M. King and Ben T. Stevenson formed a partnership to explore for and develop oil and gas. A partnership agreement was executed as of January 1959, becoming a corporation as of May 1, 1959. This operating company was known as King-Stevenson Oil Company, Inc. ("KSOC, Inc."). 72% of the stock was issued to King and 28% to Stevenson, but on October 21, 1965, an arbitration agreement was signed in order to determine the exact valuation of King's and Stevenson's partnership shares and the amount owed by King to the corporation. An arbitration award was entered on September 15, 1967, awarding Stevenson a 31.46% interest, plus $127,780.89.

In 1960, a new operating corporation was formed by King, Stevenson, and their associates, known as King-Stevenson Associates, Inc., and early in 1961 most of the assets of KSOC, Inc., the incorporated partnership, were transferred to this new operating company. In turn, King-Stevenson Associates, Inc. (later becoming King-Stevenson Gas and Oil Company and still later King Resources Company) issued its stock to the associates of King and Stevenson and to KSOC, Inc. Thereafter, KSOC, Inc. was largely a holding company. It received

Timothy G. Lowry, Owen Rall, Julius Fishman, Chicago, Ill., Herbert C. Loth,

about 38% of all the stock in King-Stevenson Gas and Oil Company and also held a few leaseholds and all the stock of a small royalty-owning company (Tioga Petroleum Corporation). Until the 1967 arbitration award, King and Stevenson respectively held 72% and 28% of the KSOC, Inc. stock.

In his amended complaint, King sought performance of an option agreement allegedly entitling him to 58,562 shares of common stock in King Resources Company at $16 per share,[1] the price fixed by two of three appraisers appointed under the option agreement. King also sought $1,250,000 in damages for the wrongful withholding of the shares. Jurisdiction was based on diversity of citizenship. In the answer to the amended complaint, Stevenson asserted that the appraisal was void because the appraisers' authority had expired and because the third appraiser was not present when the majority arrived at the appraisal figure. The answer also asserted that King did not furnish adequate information to Stevenson and the appraisers and indeed furnished them false information as to the assets of King Resources Company. This withholding of adequate information from Stevenson and the appraisers and giving them false information were purportedly in violation of Section 10(b) of the Securities Exchange Act of 1934 and Regulation 10b–5 of the Securities and Exchange Commission. In his counterclaim, Stevenson sought a judgment invalidating the appraisal or, alternatively, a determination by the district court of the then fair market value of the shares. In an amendment to his answer, Stevenson added the claims that there was no consideration for the option agreement and that King coerced him into entering it and was guilty of using the option agreement in an unconsciona-ble and oppressive way, thus barring specific performance.

The district court resolved all issues in favor of King, except that Count II of the amended complaint, seeking damages, was dismissed *sua sponte*. On July 16, 1969, Stevenson was ordered to deliver to King 351,372 shares of King Resources Company stock for $714,226.47.[2] Stevenson complied except as to 26,928 shares, which the transfer agent had mailed to Stevenson on July 31, 1969. On November 26, 1969, the district court held Stevenson in contempt for not turning those shares over to King. Later that day they too were turned over to King, and the order for issuance of a bench warrant for Stevenson was vacated.

We are in accord with the district court's disposition of the various issues and therefore affirm.

I

Stevenson first challenges the validity of the appraisal on the grounds that the appraisers' authority under the option agreement had expired and had been expressly terminated by Stevenson. In its opinion denying summary judgment, the district court thoroughly considered and rejected these arguments.

In an October 21, 1965, option agreement, Stevenson gave King a 5-year option to purchase all Stevenson's shares in King Resources Company. A month thereafter, King exercised this option when there was no public market for the shares. The pertinent part of the option agreement provided:

"2. (b) If there is no public market for K–R shares, the purchase price shall be the market value as of the date said notice is deemed to have been received by Stevenson as determined by not less than two of three ap-

---

1. At the time of the filing of the original complaint King claimed to be entitled to approximately 58,562 shares at the appraised value of $16 per share. There was a two for one split of the stock in March 1967, doubling the shares sup-posedly covered by the option. There was a three for one split in February 1968, and this was taken into account in the final decree.

2. See note 1 *supra.*

praisers, one of which shall be selected by King, one by Stevenson and the third by the two appraisers first selected. The appraisers selected by King and Stevenson shall be designated with [sic] ten (10) days and the third appraiser within twenty (20) days after said notice is deemed to have been received by Stevenson, and the appraisal report of market value shall be made within thirty (30) days after the first two appraisers have been designated. If either King or Stevenson fails to select an appraiser within said ten day period, the other may select the second appraiser. If the first two appraisers fail to select a third appraiser he shall be designated by the senior judge of the U.S. District Court at Chicago. Payment of the purchase price plus interest shall be made in cash within sixty (60) days after the report of the appraisers has been made. If payment is not made by King when due, Stevenson shall have the option to force payment by suit or otherwise or to declare this agreement terminated."

On November 24, King appointed Raymond F. Kravis as his appraiser, and on December 1, Stevenson appointed David J. Harris as his. The third appariser, Duff, Anderson & Clark, Inc., acting through Walter Stringfellow, was appointed on December 21. At his request, the parties executed a written extension of the appraisal period until January 31, 1966.

The three appraisers met with the parties at King Resources' Denver, Colorado, headquarters on Monday, January 3, 1966. The next day Stringfellow had to return to Chicago because of illness lasting "several days in that week." Because of his illness, Stringfellow was unable to work on the appraisal until Monday, January 10. Due to adverse flying conditions, Kravis was unable to attend the meeting of the appraisers scheduled for February 7 in Chicago, but Stringfellow and Harris met that day. Conflicting engagements prevented the three appraisers from meeting together on subsequent dates although Stringfellow and Harris met again on February 16.

On February 7, in a draft report, Stringfellow reached a tentative valuation of $16 per share. Harris, who was Stevenson's appointee as appraiser, adhered to a $23 per share price, whereas Stevenson wanted $30–40 for his shares. On February 16, Kravis agreed to the $16 per share valuation. The final report of the appraisers therefore was dated February 16 although it was prepared on February 18, and signed by Kravis on February 19. Stringfellow sent it to the parties on February 21.

Stevenson urges that because the appraisers did not agree upon a price by January 31, the appraisal was void and unenforceable. We cannot agree.

In order to determine whether time was of the essence in completion of the appraisal, our inquiry must be directed to the intent of the parties, expressly stated or inferable from the circumstances of the transaction. Ordinarily, time is not of the essence unless made so by express stipulation of the parties or by virtue of the exigencies of the transaction itself. Cf. Texas Eastern Transmission Corp. v. Barnard, 285 F. 2d 536, 539 (6th Cir. 1960). Absent express stipulation, the focus should be upon the prejudice attending delay and upon the nature of the task to be performed. Cf. Spartans Industries, Inc. v. John Pilling Shoe Co., 385 F.2d 495, 500 (1st Cir. 1967).

In our view, the parties did not intend to make time of the essence when they allotted 30 days for completion of the appraisal. The agreement contains no stipulation terminating the power of the appraisers upon lapse of that time. The only termination provision in paragraph 2(b) dealt with overdue payment by King and afforded Stevenson the option of forcing payment by suit or terminating the agreement.

Nor can termination be reasonably inferred from the appraisal provisions themselves. Viewed in the context of the

entire transaction, the 30 days set aside for the actions of the appraisers cannot be construed as a mandatory requirement. To construe the parties' contemplated schedule as a rigid timetable would ignore both the heart of the entire transaction and the realities of the tripartite appraisal process created by the agreement. Together with the arbitration agreement, the option agreement was directed toward the resolution of the differences between King and Stevenson. It remained open for five years, and appraisal was included as an alternative means for establishing the value of the stock to be transferred. The parties undoubtedly wished to avoid undue delay in completion of the appraisal and anticipated that 30 days would provide sufficient time for an appraisal by three experts. The parties could not, however, foresee all the difficulties and complications attendant upon that process. Automatic termination of the appraisers' powers after 30 days would easily open the door to just the undue delays and deleterious disputes which the parties intended to avoid or resolve. As the district court observed:

"If the parties had intended that the option should be void if the appraisers could not agree within a certain time, it would have been a simple matter to have included a provision to that effect. Moreover, I find it impossible to presume that either party would have agreed to a provision which would have given persons [the three appraisers], not parties to the agreement, the ability to void their rights under their agreements. King's option rights appear to have been too hard won for that."

■ We likewise reject the contention that Stevenson revoked the powers of the appraisers on February 15, prior to the rendition of their report. Stevenson clearly had no power retroactively to convert the 30-day appraisal period into a mandatory requirement for completion of that condition. Nor can his February 15th letter attempting revocation be held effective as of that date. Where, as here, a formal date for performance of a condition is specified in an agreement with time not of the essence, after that date has passed either party may make performance on a subsequent date essential by giving notice to that effect, provided that the notice leaves a reasonable time for rendering the performance. See 3A Corbin on Contracts, § 723, p. 383 (1960). Stevenson's letter of February 15th specified no subsequent date and did not indicate that a reasonable time would be permitted. February 15 did not itself represent the outer boundary of reasonableness for the time needed for an appraisal. The delays were due in part to the illness of one of the appraisers. All concerned acted diligently in attempting to reach agreement on the valuation of the stock. Stevenson and his counsel were found to have participated in the appraisal process through February 14 without any indication that they considered the delays unreasonable or their position unduly prejudiced by the lapse of time. Stevenson has conceded that the appraisers were not told to stop working after their original January 31st deadline. Harris, Stevenson's own appraiser, submitted his appraisal report of $23 per share on February 23, 1966, apparently considering that his authority had not terminated on January 31. Under all these circumstances, we agree with the district court that the 16-day delay did not invalidate the appraisal.

II

■ Before this Court, Stevenson has vigorously argued that the appraisal report was void because it was assertedly not the product of joint deliberations among all three appraisers. Even though the option agreement provided for the valuation of the stock to be set by the majority of the appraisers, Stevenson urges that joint participation and consultation were required.

We find it unnecessary to consider this argument. It is well settled, that a litigant may not seek reversal by this Court on a ground not presented to the district

court for consideration. Federal Savings & Loan Insurance Corp. v. Quinn, 419 F.2d 1014, 1019 (7th Cir. 1969); United States v. Tyrrell, 329 F.2d 341, 345 (7th Cir. 1964). Although this contention was included in Stevenson's answer to the amended complaint, it was not pressed before the trial court. Accordingly, we decline to consider it here. Desert Palace, Inc. v. Salisbury, 401 F.2d 320, 324 (7th Cir. 1968).

### III

After five weeks spent in trying the remaining issues in the case, the district judge prepared a second opinion awarding King specific performance of his option to acquire Stevenson's King Resources Company stock, but denying any damages to King. At the same time, Stevenson's counterclaim was "denied in its entirety." In the second opinion, the court considered together Stevenson's allegations that he was coerced into signing the option agreement and that the option agreement was used against him in an unconscionable and oppressive way.

In our judgment, the trial judge properly rejected these defenses. The option agreement was prepared by the attorneys for both parties and was fully understood by them at the time of their execution. As the district court found, both parties were highly intelligent and competent businessmen who entered into the option agreement and companion arbitration agreement of their own free will. We agree that Stevenson did not prove that he gave King the option because of Stevenson's poor financial condition, nor did he prove that King put financial pressure upon Stevenson before the option agreement was executed. There was no showing that the option agreement was oppressively used by King after its execution. The findings below that Stevenson was not coerced into signing the option agreement and that it was not used oppressively against Stevenson were not clearly erroneous and therefore, under Rule 52(b) of the Federal Rules of Civil Procedure, they may not be set aside.

### IV

Stevenson next contends that the option agreement is void for want of consideration. However, the option agreement and the arbitration agreement were both executed on October 21, 1965, refer to each other, and were plainly intertwined. Stevenson concedes that King would not have signed the arbitration agreement if Stevenson had not signed the option agreement. The trial judge properly concluded that "the arbitration agreement constituted special consideration for the option agreement."

### V

Stevenson also complains that the appraisers were given false or insufficient information before they reached their $16 per share valuation. Although the appraisers themselves testified they had received enough information on which to base their valuation, Stevenson asserts that they were not informed of: (1) the value of King Resources Company's undeveloped acreage; (2) the partial ownership of some molybdenum claims; (3) the existence of a special fund sponsoring public participation in oil and gas ventures; and (4) King Resources' estimates of proven undeveloped gas reserves. Each of these matters was thoroughly considered and persuasively disposed of by the court below, and this opinion will not be prolonged by commenting upon them singly. We concur in the district judge's findings that these complaints were baseless.

Since Stevenson has not shown that the appraisers were given inadequate or false information, his claim that King violated Section 10(b) of the Securities Exchange Act of 1934 and SEC Rule 10b–5 also must fall. Furthermore, even though the district court found a fiduciary relationship existed between Stevenson and King, there was no breach of that relationship in the light of the conclusions below that relevant information had been made available to the appraisers, that there was adequate consideration for the option agreement, and that King had no independent informa-

tion which Stevenson needed before executing the option agreement.

## VI

■ Regardless of "whether or not the appraisers did a perfect job," the district court concluded that the record contained numerous indications of value suggesting that a per share price in the area of $16 as of November 21, 1965, was fair. This conclusion satisfies Stevenson's alternative counterclaim prayer that the trial court itself fix a fair price for the shares.

The $16 figure was supported by many factors. In October 1965, Stevenson chose not to purchase 2,000 shares of King Resources stock at $13.20 under an employee stock option plan. He approved the transfer of assets of the parties' holding company to King Resources Company at $14 per share on November 18, 1965. Moreover, in a release between the parties with respect to the dispute under the arbitration agreement, Stevenson accepted $14 per share in lieu of King Resources stock in September 1967. In December 1965, an underwriting firm unsuccessfully endeavored to sell King Resources stock at $15 per share. In April 1966, Stevenson and the other directors of King Resources voted to sell 200,000 shares of company stock at a price of not less than $15 per share. In March 1966, King Resources proposed to issue stock valued at $16 per share. Finally, in July 1965 and April 1966, the King Resources' directors, including Stevenson approved employee stock options at prices ranging from $14 to $16 per share.

Accordingly, we see no reason to upset the valuation figure reached by the appraisers and concurred in by the trial judge.

## VII

■ Stevenson also attacks the remedy of specific performance. However, the trial judge justifiably held that this block of stock was sufficiently important to King as president and developer of King Resources to require specific performance in order to permit him to retain control and enjoy the "fruits of his special labors." As noted below, if King were forced to attempt to acquire the stock on the open market, its price would have been driven up sharply and artificially. The trial judge was warranted in concluding that money damages could not compensate King for the loss of the stock.

Because we concur in the remedy of specific performance, it is unnecessary to consider King's alternative argument that he was entitled to damages stemming from Stevenson's wrongful refusal to deliver the shares in 1966.

## VIII

■ Stevenson asserts that 36,144 King Resources shares issued to him on December 31, 1965, were not subject to the option in question. The option agreement, however, gave King the right "to purchase the shares of K–R now owned by Stevenson directly and owned by him indirectly through his ownership of shares of KSOC, Inc.", including stock dividends and splits. The short answer to Stevenson's argument is that in April 1966, he signed an SEC registration statement, which did not dispute that the stock he had received from KSOC, Inc. upon its liquidation and the shares he was to receive under the arbitration agreement were subject to this option. Furthermore, on the date of the option agreement, Stevenson, as a director of King Resources, voted for a resolution that it acquire all the assets of KSOC in exchange for King Resources stock at $14 per share. This proposal was accepted by KSOC over his signature three days before the option was exercised. Therefore, these shares were plainly held by Stevenson "indirectly through his ownership of shares of KSOC, Inc." within the reach of the option agreement.[3]

---

3. Since this opinion disposes of Stevenson's argument with respect to these 36,144 shares, his motion to remand, etc., as to those shares is hereby denied.

Stevenson also argues that 26,-928 shares of King Resources stock were not covered by the option because he had purchased them outside of his ownership of shares in KSOC, Inc. However, as noted, the option agreement specifically included the King Resources shares owned by Stevenson directly. Since these shares were the only ones owned directly by Stevenson on the option agreement date, obviously they were covered by the option. Because these shares were included in its decree, the district court was within its rights in adjudging Stevenson in contempt for failing to deliver them to King.

All other points raised by Stevenson have been thoroughly considered and adjudged to be without merit.

Decree and orders affirmed.