Richard W. Wallach, J.
This case presents an appeal to equity, in order to avoid the strict rigors of the law. Such an invitation is always .attractive. But, as has oft been seen, there is little room for the Chancellor’s foot to rotate in the law of bills and notes.
Plaintiff brings this action on a promissory note in the face amount of $250,000, which provided for payment in 19 consecutive monthly installments. The note contained the following provision: “If the first eighteen scheduled payments are timely paid, or prepaid, the entire principal amount payable hereunder shall be deemed to have been paid in full.” The lopsided payment schedule imbued this provision with extraordinary importance, since the first 18 payments aggregate only one half of the principal sum and the final installment is in a like sum of $125,000.
Each installment was payable on the first day of the month at a Madison Avenue branch of the Chemical Bank. No grace period whatever was provided.
It is not for the court to speculate as to the reasons for this unusual payment .schedule. Nor is it helpful to characterize the arrangement either as a lavish premium for punctilious performance, or a severe penalty in the event of breach. The note was fashioned by skilled counsel at arm’s length — those counsel appear within the four corners of the note as corporate signatory and payee — and no suggestion is made of overreaching in the execution and utterance of the note.
The maker of the note, now known as General Energy Corp. is a corporation with its principal office at Kansas City, Missouri. The first 12 installments commencing March 1, 1972, through 'February 1, 1973, were paid by mailing a cashier’s check by certified mail, return receipt requested, which invariably (except for a single one-day delay as to which plaintiff made no demur) arrived in the bank on the payment date.
The 13th installment, however, set the stage for this lawsuit. On February .28, 1973, defendant’s treasurer, James C. Laird, committed the installment payment in the sum of $5,191 to the United States mail in Kansas City by an ordinary corporate check. Somewhat predictably, the check did not arrive at the Chemical Bank until March 5, three days after plaintiff exercised its option to accelerate the entire balance by reason of non-receipt.
Faced now with the specter of heavy cost for this cavalier form of tender, defendant has marked a lissome trail of argumentation in an attempt to demonstrate that mailing an ordinary *609 draft in Kansas City on the last day of the month constituted payment in New York City the next day.
It is possible to march some distance with defendant. One could accept the notion that plaintiff’s acquiescence in the use of the mails for the first 12 installments denoted authorization of that mode of delivery to the bank (United Securities Corp. v. Franklin, 180 A. 2d 505 [Mun. Ct. App. D. C.]). Furthermore, the Uniform Commercial Code has preserved the concept of “ constructive delivery ” as expressed in the earlier Negotiable Instruments Law (Billingsley v. Kelly, 261 Md. 116; Snyder v. Town Hill Motors, 193 Pa. Super. Ct., 578). But the underbrush closes in upon defendant’s contention that the ordinary corporate check constituted valid tender of payment.
It is true, of course, that a check is conditional payment, and where an instrument is “ taken for an underlying obligation * * * the obligation is suspended pro tanto until the instrument is due or if it is payable on demand until its presentment.” (Uniform ¡Commercial Code, § 3-802, subd. [1], par. [b]; emphasis added.) Constructive delivery, however, cannot be escalated into constructive taking. “In a payment, we ordinarily look only to the act of the party making it; but yet its legal import is an act in which the debtor tenders and the creditor accepts that which is offered.” (Matter of Kelly, 151 Misc. 277, 280-281, quoting Thompson v. Kellogg, 23 Mo. 281, 285 [emphasis in original].) At no time did plaintiff accept this draft; on the contrary he rejected it at the first opportunity. And a final essential ingredient missing before a finding of payment may be made here is “an immediate change of ownership in the medium of payment” (Matter of Kelly, supra, p. 281; Sokoloff v. National City Bank of N. Y., 130 Misc. 66, affd. 223 App. Div. 754, affd. 250 N. Y. 69). Thus “ a check * * * becomes absolute payment only when it is paid by the drawee bank in due course.” (3 Anderson, Uniform Commercial Code [2d ed.],p. 144.)
It may be added that plaintiff’s declination to invoke acceleration on the occasion of one previous tender of an ordinary check did not constitute a waiver of future rights, in view of the express provisions in the note to the contrary.
Finally, defendant has suggested that its default was insubstantial and de minimis, but this doctrine has no applicability in measuring performance of the terms of commercial paper (Graf v. Hope Bldg. Corp., 254 N. Y. 1). In the Graf case the court upheld a mortgage foreclosure commenced one day after the expiration of a 20-day grace period, observing (p. 4): *610 “ Stability of contract obligations must not be undermined by judicial sympathy.”
In addition to its principal sum with interest, this note contains provision for the payment of 15% of any balance due as an attorney’s collection fee. Such a fee is properly granted without further hearing (Messina v. Tannenbaum, 37 A D 2d 1041; National Comm. Bank and Trust Co. v. Bart Boat Co., 41 A D 2d 159).
Accordingly, plaintiff is entitled to judgment in its favor in the principal sum of $125,000, together with $18,750 counsel fees, or in the total sum of $143,750, together with interest as demanded in the complaint.