Fred N. SAHADI and Helen Sahadi, Individually and as Assignees of the Claims of the Trustee of Great Lakes and European Lines, Inc., Bankrupt, Plaintiffs-Appellants,

v.

CONTINENTAL ILLINOIS NATIONAL BANK AND TRUST COMPANY OF CHICAGO, a National Banking Association, Defendant-Appellee.

No. 82–1767.

United States Court of Appeals, Seventh Circuit.

Argued Dec. 8, 1982.

Decided March 31, 1983.

As Modified April 5, 1983.

As Amended on Denial of Rehearing and Rehearing En Banc June 1, 1983.

Thomas K. McQueen, Jenner & Block, Chicago, Ill., for plaintiffs-appellants.

Paul E. Plunkett, Mayer, Brown & Platt, Chicago, Ill., for defendant-appellee.

Before WOOD and ESCHBACH, Circuit Judges, and HOFFMAN, Senior District Judge.*

HARLINGTON WOOD, Jr., Circuit Judge.

This is an appeal from the district court's order granting partial summary judgment in favor of the defendant-appellee Continental Illinois Bank (the Bank) in an action alleging that the Bank breached its agreement with the plaintiff-appellant's business, Great Lakes and European Lines, Inc. (GLE), by calling a $7 million loan when GLE tendered interest payments less than one day after they were due. On appeal, the plaintiffs argue that the district court erred in granting summary judgment because there existed an array of genuine and material disputed factual issues concerning, *inter alia,* whether GLE's day-late tender of payment was a "material" breach of the underlying agreement warranting the Bank's calling of the loan, whether the Bank's conduct in accepting late interest payments under the predecessor loan agreement with GLE resulted in a waiver of its right to call the loan for the delayed tender without notice, and whether the Bank's calling of the loan without notice violated its duty of "good faith" under the Uniform Commercial Code and the common law. Because there existed a genuine factual dispute at least as to the question of whether there was a "material" breach of the agreement, we find that the district court's award of summary judgment to defendant on the question of breach was inappropriate, and we remand for a trial.

I.

Viewing the facts in the light most favorable to the plaintiffs, as we must, there emerges a story of financial brinkmanship and opaque dealing in which neither side emerges wholly blameless. GLE, an international shipping line, began its relationship with the Bank in 1976 with a $3 million loan, personally guaranteed by the Sahadis. The Bank increased its loan commitment to $11 million in 1977, a commitment upon which GLE relied in expanding its business,

* The Honorable Walter Hoffman, Senior District Judge of the Eastern District of Virginia, is sitting by designation.

but which was repudiated by the Bank, to the detriment of GLE, when personal and institutional friction developed between the parties. The parties quickly reached a stalemate, with GLE threatening to sue the Bank for breach of its loan commitment and the Bank threatening to call the loans already extended. Meanwhile, GLE successfully interested another lender which conditioned its backing on GLE's settlement of its differences with the Bank.

Negotiations ensued in which, the evidence indicated, the Bank primarily sought to obtain release from the Sahadis and GLE of their claims stemming from the Bank's purported breach of its loan commitment, and to obtain further collateral from the Sahadis to secure their guarantee of the outstanding loan. The Bank also sought to have GLE's outstanding interest payments, which had been withheld during the several months of the dispute, brought up to date.

The negotiations resulted in two agreements executed on October 25, 1977. One agreement ran between the Sahadis and the Bank, completely releasing the Bank from any claims stemming from its failure to fulfill the loan commitment; it also extensively collateralized the Sahadis' guarantee of the Bank's outstanding loan to GLE. The other agreement, cross-referenced to the first and running between GLE and the Bank, provided in turn for the payment of interest and for the Bank's forbearance from demanding payment of the entire outstanding loan and accrued interest:

1. [The Bank] hereby agrees to forbear from demanding payment of the Liabilities during the period ending December 31, 1977, except for payment of current interest thereon as more fully set forth in clause (i) of paragraph 3 below.

The agreement went on to state:

3. Notwithstanding the foregoing, [the Bank] may demand payment in full of the Liabilities prior to December 31, 1977 if . . . (i) [GLE] shall fail to make payment of interest accrued on the Liabilities through September 30, 1977 on or before November 15, 1977.

This latter paragraph, as initially drafted, provided for October 7, 1977 as the deadline for the payment of accrued interest. This date was changed to November 15, 1977 at Sahadi's request with no objection by the Bank; moreover, there was no evidence that the precise date on which accrued interest was to be paid was ever a point of contention in the negotiations.

Despite the seeming air of reconciliation surrounding these agreements and despite the fact that the Bank had routinely accepted late interest payments from GLE under the underlying loan which the agreement modified, plaintiff's evidence established that after October 25, the Bank furtively prepared to take advantage of GLE's propensity for late payment to call the loan under the technical letter of the new agreement. Although the Bank sent a billing to GLE headquarters on November 9, 1977 reminding GLE of the interest due on November 15 and referring to the October 25, 1977 agreement, the letter made no mention of the Bank's intent to call the loan if payment did not arrive on the precise contractually specified date. In speaking with top GLE representatives on November 14 and 15, the Bank made no mention of its intent to call the loan.

Sahadi was reminded by a subordinate on November 14 of the November 15 interest payment date, but Sahadi responded that the payment should be delayed so that GLE monies in Chicago would be available to satisfy other immediate liabilities. As Sahadi noted in his affidavit, "There was no great significance attached to the payment of interest in this covenant; it did not occur to us that the bank would treat the interest payment date any differently than it had treated previous payment dates." On the morning of November 16, a GLE representative was queried by the Bank as to whether the interest payments had been made; when the GLE representative responded negatively but indicated that the payment would be made by the end of the week, the Bank representative responded that the matter could be discussed later that day. At that later meeting, the Bank presented the surprised GLE representative with noti-

fication that the loan was called. The GLE representative immediately offered to tender payment for the due interest from the company's account with the Bank, but the Bank refused.[1] The calling of the loan destroyed GLE and subjected the Sahadis to liability on the personal guarantee.

The Sahadis, indirectly as assignees of GLE, thereafter filed this action against the Bank, seeking release from their personal guarantee agreement and damages for the destruction of GLE. Chiefly, they contended that GLE's brief delay in tender of the November 15 interest payment did not amount to a "material" breach of the October 25 agreements justifying the Bank's cessation of forbearance, and that the Bank's conduct was in any case unjustified under principles of waiver and "good faith."

In granting partial summary judgment to the Bank, the district court rejected the Sahadis' waiver argument, but did not directly address their "material" breach or "good faith" contentions, either of which, the Sahadis argued, required a trial to assess the conflicting evidence. Instead, the district court chose the alternative analytical framework of "ambiguity" and held that, since the November 15 date was not "ambiguous," there was no room for factual difference as to whether a brief delay in payment was permitted. After the district court denied the Sahadis' motion for reconsideration, this appeal followed.

## II.

The limitations upon the use of summary judgment are stringent, and we may not affirm the district court's order unless the record reveals the absence of any genuine issue of material fact. Fed.R.Civ.P. 56(c). We cannot agree with the district court that under Illinois law, expressly made applicable in the agreements here, this record presents no issues of material fact requiring a full trial. While outstanding issues of material fact may well exist also in relation to the Sahadis' waiver and breach of "good

faith" claims, we need not reach those questions here and so confine our analysis for the purposes of this appeal to the issues of "material" breach.

■ It is black letter law in Illinois and elsewhere that only a "material" breach of a contract provision by one party will justify non-performance by the other party. *See Janssen Bros. v. Northbrook Trust and Savings Bank,* 12 Ill.App.3d 840, 299 N.E.2d 431, 434 (2d Dist.1973); *Herbert Shaffer Associates, Inc. v. First Bank of Oak Park,* 30 Ill.App.3d 647, 332 N.E.2d 703, 710 (1st Dist.1975); *Anderson v. Long Grove Country Club Estates,* 111 Ill.App.2d 127, 249 N.E.2d 343, 349 (2d Dist.1969); *Wright v. Douglas Furniture Corp.,* 98 Ill.App.2d 137, 240 N.E.2d 259, 262 (1st Dist.1968); *See also C.G. Caster Co. v. Regan,* 88 Ill.App.3d 280, 43 Ill.Dec. 422, 426, 410 N.E.2d 422–426 (1st Dist.1980); *John Kubinski & Sons, Inc. v. Dockside Development Corp.,* 33 Ill.App.3d 1015, 339 N.E.2d 529, 534 (1st Dist.1975); 5 *Williston on Contracts* §§ 675, 805 (3d ed. 1961); *Restatement (Second) of Contracts* § 229 (1979). Moreover, the determination of "materiality" is a complicated question of fact, involving an inquiry into such matters as whether the breach worked to defeat the bargained-for objective of the parties or caused disproportionate prejudice to the non-breaching party, whether custom and usage considers such a breach to be material, and whether the allowance of reciprocal non-performance by the non-breaching party will result in his accrual of an unreasonable or unfair advantage. *Wright,* 240 N.E.2d at 262; *Anderson,* 249 N.E.2d at 349; *C.G. Caster Co.,* 43 Ill.Dec. at 426, 410 N.E.2d at 426; *National Importing & Trading Co. v. E.A. Bear Co.,* 324 Ill. 346, 155 N.E. 343, 346 (1927); *Cantrell v. Kruck,* 25 Ill.App.3d 1060, 324 N.E.2d 260, 263 (2d Dist.1975); *Janssen Bros.,* 299 N.E.2d at 433. All of these issues must be resolved with reference to the intent of the parties as evidenced in large part by the full circumstances of the transaction, thus

---

1. Although the company had earlier instructed the Bank that the latter was not to *automatically* withdraw funds from this account to cover interest due, there is no contention that the company's explicit tender of payment on November 16 from this account was ineffective.

making these issues especially unsuited to resolution by summary judgment. *Conrad v. Delta Airlines, Inc.,* 494 F.2d 914, 918 (7th Cir.1974); *Janssen Bros.,* 299 N.E.2d at 433.

The need for a complete factual inquiry into the underlying circumstances and commercial custom is especially acute where, as here, the purportedly breaching party claims that time was not of the essence of the contract. Even where the contract contains a provision, not present here, explicitly stipulating that "time is of the essence," the Illinois courts will inquire into the situation of the parties and the underlying circumstances to determine whether a delay in performance resulted in a "material" breach. *Janssen Bros.,* 299 N.E.2d at 434; *John Kubinski & Sons, Inc.,* 339 N.E.2d at 531, 534; *Cantrell,* 324 N.E.2d at 263. *See also* 3A *Corbin on Contracts* § 715 (1960); 6 *Williston on Contracts* § 846 (1961); *Restatement (Second) of Contracts* § 229 (1979). The record in the case at bar discloses evidence that would permit a trier of fact to find that payment of the interest due precisely on November 15 was *not* "of the essence" of the agreement from the Bank's point of view. For example, Sahadi himself was allowed unilaterally to choose the payment date, and there was no contention in negotiations over the fixing of that date; the prejudice to the Bank's rights stemming from a payment delay of several hours was *de minimis* in view of the Bank's retention of the enhanced collateralization, its retention of the complete release of legal claims stemming from the reneged-upon loan commitment, and the Bank's clear knowledge that GLE had on hand in the Bank, and tendered, funds sufficient to satisfy the interest requirement; the Bank had previously accepted late payments in its course of dealings with GLE; and there was evidence that calling a loan for such a brief delay was without precedent in the banking community. Significantly, even the Bank conceded at oral argument on appeal, "The important thing . . . is not the date of the fifteenth in that sense; it's the fact of the promise." Whether or not these facts would be sufficient to prove non-materiality in light of all the other evidence

adduced at trial, they at least raise a genuine issue as to whether the "promise" was in any important way defeated by the hours of delay in tender of payment. Indeed, it would be difficult to posit a set of alleged facts making summary resolution of the issue of "materiality" in favor of the defendant less appropriate.

The Bank launches three lines of attack against such a conclusion. First, it argues, the contract before us presents a uniquely attractive case for the rigid and summary application of time requirements because it contains a specific provision allowing the cessation of the Bank's forbearance if interest was not paid on or before November 15, 1977. However, this argument merely assumes what it seeks to prove: that the payment of interest on precisely the named date was an essential part of that specific provision, and that whether the precise day of payment was essential can be determined without the benefit of a full inquiry at trial.

The Illinois courts have rightly spurned such conclusory logic. In *Janssen Bros. v. Northbrook Trust & Savings Bank,* 12 Ill. App.3d 840, 299 N.E.2d 431 (2d Dist.1973), for example, a real estate contract specifically provided that time was of the essence and that if certain payments were not made by the named date, certain deeds would be automatically recorded and the purchase price refunded. 299 N.E.2d at 432. Notwithstanding this explicit recitation of the consequences of late payment, the court refused to undertake a wooden reading of the provision, let alone to do so through a summary procedure. Noting that even where the parties clearly intended to regard a specific payment date as crucial, "equity will refuse to enforce such a provision when to do so would be unconscionable or would give one party an unfair advantage over the other," *id.* at 434, the court also underscored that "summary procedure is not . . . suited to situations in which substantial questions are present relating to the formation and terms of a settlement agreement or its construction, and evidence or testimony is required to satisfactorily resolve the issue," *id.* at 433. *Accord Elliott v. Snyder,*

246 S.C. 186, 143 S.E.2d 374, 375, 376 (1965). Significantly, none of the Illinois cases cited by the Bank to illustrate the strict and summary application of explicit consequential provisions involve the enforceability of time requirements; rather, the provisions and defaults in those cases concern far more substantive matters, such as absolute failure to properly maintain and improve municipally granted property or the failure of a real estate purchaser to obtain required mortgage financing.[2] By contrast, the Illinois case most directly on point, *Janssen Bros., supra,* well expresses the special principles extended to the enforcement of time requirements even when attached to explicit termination provisions, in view of the fact that performance dates are by their nature accessory rather than central aspects of most contracts. *See, e.g.,* 6 *Williston on Contracts* § 846 (1961); *Corbin on Contracts* § 715 (1960); *Restatement (Second) of Contracts,* § 229 and Illustrations 3 and 4 (1979).

The Bank contends alternatively that no room for a "materiality" analysis and its concomitant factual inquiry exists here because the payment of the interest on or

before November 15 was an "express condition" of the Bank's forbearance, and thus its terms were required to be exactly fulfilled. This second argument, like the Bank's first, suffers from its conclusory assumption of what it seeks to prove—that the payment of the interest on the precise named date rather than payment of the interest in a reasonably prompt manner was of threshold importance to the completion of the contract. In short, asking whether a provision is a "condition" is similar to stating the "materiality" question: both seek to determine whether its performance was a *sine qua non* of the contract's fulfillment. And that determination may not be made through a mechanical process.

█ In general, contractual terms are presumed to represent independent promises rather than conditions. 3A *Corbin on Contracts* § 635 (1960); 5 *Williston on Contracts* §§ 665, 666 (1961). Determining whether this presumption may be upset entails a full inquiry into the "intention of the parties and the good sense of the case" including such factors as whether the protected party can achieve its principal goal without literal performance of the contrac-

**2.** In addition, of the three Illinois cases cited by the Bank, we note that two—*City of Belleville v. Citizen's Horse Railway,* 152 Ill. 171, 38 N.E. 584 (1894) and *People v. Central Union Telephone Co.,* 232 Ill. 260, 83 N.E. 829 (1900)— were decided in the salad days of American legal formalism which were marked by an unprecedented adherence to the letter of contractual texts—a jurisprudential posture that has since been eclipsed by the kind of materiality approach embodied in *Janssen Bros., supra. See, e.g.,* Horwitz, *The Transformation of American Law, 1780–1860* 160–210, 253–69 (1977) (legal formalism in contract law described as attempt to displace customary fairness considerations from common law adjudication in favor of "objective" standards favoring economic rationalization); Gilmore, *The Death of Contract* 87–103 (1974) (describing attachment of contractual formalism's fate to the brief triumph and subsequent decline of laissez-faire economic doctrines). In the third Illinois case cited by the Bank, *Dodson v. Nink,* 72 Ill. App.3d 59, 28 Ill.Dec. 379, 390 N.E.2d 546 (2d Dist.1979), the court considered the question of whether a variation in performance amounted to a cognizable breach of a termination clause "under the circumstances," emphasizing that the variation had placed a new substantive duty on the other party. 28 Ill.Dec. at 380–383,

390 N.E.2d at 547, 550. Such a fact-sensitive, contextual review is markedly different from the summary procedure the Bank would have us sustain here.

The non-Illinois cases cited by the Bank fail to persuade us for similar reasons. In *Ritter v. Perma-Stone Co.,* 325 P.2d 442 (Okl.1958), there was no question of whether a brief delay of payment worked a "material" breach of a termination provision; the defaulting party had simply failed to tender at any time payment required under that provision. And in *King v. Stevenson,* 445 F.2d 565 (7th Cir.1971), the reviewing court merely noted the hypothetical dictum of the trial court that the existence of a time contingency provision might have been conclusive; moreover, the time provision in that case concerned the performance of a condition, i.e., the obtaining of an appraisal of the value of stock to be sold, whose occurrence was, unlike here, a logical precondition to the consummation of the entire transaction. 445 F.2d at 569, 570. In any event, to the extent that these decisions may be read to permit summary disposition of the issue of the materiality of time in this termination clause, they must yield to the law of Illinois as clearly stated in *Janssen Bros., supra.*

tual provision. *Foreman State Trust and Savings Bank v. Tauber,* 348 Ill. 280, 180 N.E. 827, 831, 832 (1932); *Palmer v. Meriden Britannia Co.,* 188 Ill. 508, 59 N.E. 247, 252 (1900). So reluctant are courts to elevate a term to the status of a condition that the factual inquiry will often be undertaken in spite of the existence of explicit language, not present here, creating liability only "on condition" of the occurrence of a required, prior act. *Rooks Creek Evangelical Lutheran Church v. First Lutheran Church,* 290 Ill. 133, 129 N.E. 793, 795 (1919); 5 *Williston on Contracts* § 665 (1961) ("Especially words literally appropriate for conditions have not been given their natural meaning where the consequence would lead to injustice and a violation of the probable intent of the parties."). The Bank points to a confirmatory telex message from Sahadi stating that the Bank's forbearance was to be "on condition" that interest was paid by the named date, but such evidence is but one tile in the evidentiary mosaic; the law requires that the Sahadis be given the opportunity to present evidence that the parties only considered the payment of the interest, not its payment by an exact hour, to be the relevant "condition," if, indeed, that term as used in the telex is to be given its formal legal meaning. The Sahadis have been denied this opportunity by the district court's summary disposition.

Moreover, even if the payment of interest by the named date could be summarily construed as a necessary "condition," the district court would *still* be required to conduct a full-ranging factual inquiry into whether that condition had been "materially" breached or whether the technical breach was without "pecuniary importance." 5 *Williston on Contracts* § 805 at 839–40 (1961). *Restatement (Second) of Contracts* § 229 (1979) ("To the extent that the non-occurrence of a condition would cause disproportionate forfeiture, a court may excuse the non-occurrence of that condition unless its occurrence was a material part of the agreed exchange."); *see also Restatement (Second) of Contracts* § 229, Illustrations 3 and 4 (demonstrating that day-late payments are not "material" breaches).[3] At either level of the "promise/condition" analysis, then, summary judgment would not be appropriate in this case.

The Bank finally contends that the factual elements and general principles of the "materiality" requirement are inapplicable to the kind of loan-calling provisions present here because, it argues, contracts involving commercial paper are more strictly and literally construed than are other contracts. The Illinois cases cited by the Bank, however, do not support this premise, for they state no more than that loan acceleration clauses are not inequitable *per se;* they do not consider whether such clauses may be enforced where there is a breach of an arguably incidental element of the clause such as exact time of payment. *See*

---

**3.** Contrary to the Bank's assertion, the "forfeiture" required to trigger the analysis of Restatement § 229 describes without strain the effect of a technical reading of the contract here. Comment (b) of that section defines a "forfeiture" as a "denial of compensation that results when the obligee loses his right to the agreed exchange after he has relied substantially, as by preparation or performance on the expectation of that exchange." Construing, as we must under Illinois law, both the Sahadi/Bank agreement and the simultaneous GLE/Bank agreement together as part of the same transaction, *Burgener v. Gain,* 101 Ill. App.3d 699, 57 Ill.Dec. 172, 428 N.E.2d 722, 725 (5th Dist.1981); *Pecora v. Szabo,* 94 Ill.App.3d 57, 49 Ill.Dec. 577, 418 N.E.2d 431, 436 (2d Dist.1981), it is apparent that the Sahadis surrendered their legal claims against the Bank for its breach of the $11 million loan commitment and posted substantial additional collateral as a result of reliance upon the Bank's forbearance which is now sought to be negated through a technical interpretation. At the very least, this is the kind of circumstance which demands careful weighing of "the extent of the forfeiture by the obligee against the importance to the obligor of the risk from which he sought to be protected and the degree to which that protection will be lost if the nonoccurrence of the condition is excused to the extent required to prevent forfeiture." *Restatement (Second) of Contracts* § 229, comment b (1979). Moreover, we note that, the *Restatement* standard aside, under Illinois law, this inquiry may be undertaken even when the breach of a condition does not result in a "forfeiture." *See Janssen Bros.,* 299 N.E.2d at 434.

*Curran v. Houston,* 201 Ill. 442, 66 N.E. 228, 229 (1903); *Schatzkis v. Rosenwald & Weil,* 267 Ill.App. 169, 174 (1st Dist.1932); *Meyer v. Levy,* 249 Ill.App. 408, 423 (1st Dist.1928). Moreover, we would decline to speculate that the materiality principles embodied in later Illinois cases like *Janssen Bros., supra,* involving an arm's length corporate real estate transaction, would be held inapplicable by the Illinois courts to loan contracts like those present here.[4]

### CONCLUSION

Although we need not reach the question of whether summary judgment may properly be applied to plaintiffs' assertion of waiver and "good faith," we hold that such a procedure was an inappropriate short-cut in resolving the necessarily fact-bound, complex question of "material" breach. The "materiality" issue cannot be avoided. The holding that the deadline date for interest payments in the contract was "unambiguous" does not resolve the matter. The plaintiffs concede the existence of an unambiguous, contractually specified date, but this is merely the beginning, not the end, of the required factfinding analysis.

REVERSED AND REMANDED.

---

4. In one case cited by the Bank, *Stream v. CBK Agronomics, Inc.,* 79 Misc.2d 607, 361 N.Y.S.2d 110 (Sup.Ct.1974), *aff'd* 48 A.D.2d 637, 638 N.Y.S.2d 20 (1975), the court did hold a borrower strictly to the precise date of a note payment. We note, however, that *Stream* relied heavily upon an earlier New York case, *Graf v. Hope Building Corp.,* 254 N.Y. 1, 171 N.E. 884 (1930) (Cardozo, J., dissenting), which has been softened considerably by intervening New York decisions. *See, e.g., Domus Realty Corporation v. 3440 Realty Co., Inc.,* 179 Misc. 749, 40 N.Y.S.2d 69, 73 (1943), *aff'd,* 266 A.D. 725, 41 N.Y.S.2d 940 (1943) (five-day mortgage payment delay excused where delay due to misunderstanding of mortgagor and any prejudice resulting to mortgagee was "entirely out of proportion to the harshness of the plaintiff's action in declaring the entire amount of the principal due...."). In addition, the *Stream* court's remark that "there is little room for the chancellor's foot to rotate in the law of bills and notes," 361 N.Y.S.2d at 112, is so clearly contrary in spirit to the broad materiality language of such Illinois cases as *Janssen Bros.* that we decline as a federal court reviewing a diversity matter to unilaterally engraft this drastic exception onto Illinois law. *Murphy v. White Hen Pantry Co.,* 691 F.2d 350, 354 (7th Cir.1982).