**PUBLISHERS RESOURCE, INC.,**
**Plaintiff-Appellant,**

v.

**WALKER–DAVIS PUBLICATIONS,**
**INC., Defendant-Appellee.**

**No. 82–1009.**

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 15, 1982.

Decided Nov. 18, 1982.

As Modified on Denial of Rehearing
Feb. 9, 1983.

Richard M. Franklin, Baker & McKenzie, Chicago, Ill., for plaintiff-appellant.

James T. FitzGibbon, FitzGibbon, Roehrig, Greenawalt & Gilhooly, Chicago, Ill., for defendant-appellee.

Before CUDAHY, Circuit Judge, WEICK,* Senior Circuit Judge and POSNER, Circuit Judge.

CUDAHY, Circuit Judge.

Plaintiff-appellant Publishers Resource, Inc. ("Publishers Resource") appeals from a judgment determining that it had breached an advertising contract (the "Contract") between itself and defendant-appellee Walker-Davis Publications, Inc. ("Walker-Davis") and was thus entitled to recover only $7,640.18 in restitution for services rendered prior to termination of the contract by Walker-Davis. This case is before us under our diversity jurisdiction. The parties agree that Illinois law governs the substantive questions. We reverse and remand for a determination of damages consistent with this opinion.

### I.

Appellant Publishers Resource is an independent publisher's representative incorporated in Illinois. A publisher's representative is retained by magazine publishers to sell advertising space in magazines, usually within an assigned territory. Appellee Walker-Davis is a Pennsylvania corporation which publishes controlled circulation specialty trade magazines. Walker-Davis sends such magazines to selected recipients free of charge and derives revenue wholly from the sale of advertising. Walker-Davis also sends packets of direct response postcards to subscribers, who then mail them directly to the advertiser.

In the summer of 1973 Publishers Resource began to solicit advertising on behalf of one of Walker-Davis' publications, *Plant and Industrial Engineers' Digest.* On April 1, 1974, Publishers Resource and Walker-Davis entered into the Contract, under which Publishers Resource undertook to solicit and service advertising for Walker-Davis within an exclusive territory in the Midwest. The Contract thus provided that Walker-Davis was precluded from selling

---

* The Honorable Paul C. Weick, Senior Circuit Judge of the Sixth Circuit Court of Appeals, is sitting by designation.

directly or through other representatives within that territory. Publishers Resource was compensated on a monthly commission basis, as follows:

### COMMISSION SCHEDULE

The Publisher will pay the Representative commission on all net advertising revenues produced by its publication in the Representative's territory after deduction of 15% agency and 2% cash discounts. Representative's commissions will be paid according to the following schedule:

20% on all advertising in Industrial Products & Equipment and Safety & Security News Osha-Cards.

20% on the first ninety (90) units sold into a given issue of PLANT ENGINEER'S DIGEST (a unit being equivalent to ⅛th page of space).

22% on the next thirty (30) units in that issue.

25% on all units in the issue in excess of 120 units.

In addition, the Publisher will pay the Representative a 15% commission on all direct mail revenues from the Representative's territory.

The Contract provided that after the first full year either party could terminate the agreement by giving written notice at least 45 days prior to the annual anniversary date of the Contract.[1] If the contractual termination right were exercised by Walker-Davis, Publishers Resource was to be entitled to commissions on all advertising contracts in effect upon the date of termination, for the life of those contracts, up to a maximum of 12 months from the effective date of termination, as follows:

6. If this Agreement is terminated by the Publisher, the Representative shall be entitled to commissions on all advertising contracts in effect at the effective date of termination throughout the life of said contracts up to a maximum of twelve (12) months from the effective date of termination.

Between April 1, 1974 and August of 1977, Publishers Resource earned commissions each month under the Contract, totaling more than $200,000. On September 30, 1977, Walker-Davis terminated the Contract in a letter stating that Walker-Davis considered the agreement to have been breached by Publishers Resource's failure to meet the obligations of the agreement; Walker-Davis therefore refused to pay any commissions after August 1977. On April 19, 1978, Publishers Resource sued Walker-Davis to recover commissions owed pursuant to the termination provisions of the Contract and for restitutionary damages as well. Walker-Davis alleged in the response that Publishers Resource was owed no commissions after August 1977, since the Contract had been terminated for cause.

The district court held that Walker-Davis had terminated the Contract for cause, but awarded Publishers Resource $7,640.18 as restitution for efforts expended before the termination of the Contract. Publishers Resource appeals the denial of any recovery in excess of that amount.

### II.

This dispute involves the amount of damages owed to Publishers Resource upon termination by Walker-Davis of the advertising Contract between them. Its resolution depends in turn upon whether Publishers Resource was in breach of that Contract at the time of termination. If the termination did result from Publishers Resource's breach, then Publishers Resource is entitled solely to restitution for its efforts expended prior to termination. If Publishers Resource did not breach the Contract, however, then Walker-Davis is obligated, pursu-

---

1. The relevant provision of the Contract is as follows:

4. This Agreement shall continue in full force and effect for a term of one (1) year from the date hereof and shall continue in such full force and effect for successive periods of one (1) year thereafter. However, after the first full year, this Agreement may be terminated by either party by the giving of notice in writing, by registered mail, at least forty-five days prior to the expiration of any such yearly period.

ant to the termination provisions of the Contract, to pay Publishers Resource commissions, in accordance with paragraph 6 of the Contract, on all contracts in place within its territory for up to one year. The conflict, therefore, reduces to one of contract interpretation.

Walker-Davis argues, and the district court held, that Publishers Resource breached the agreement between them by not selling a minimum, or quota, of 90 units of advertising per month.[2] This argument is based upon Walker-Davis' assertion that such a minimum is mandated in the agreement; Walker-Davis reaches this conclusion by reading the provision that Publishers Resource "agrees to solicit and service advertising and direct mail accounts and/or their advertising agencies for Publisher and will devote such time and efforts in Publisher's behalf as required" in conjunction with the provision governing commission schedules to the effect that commissions of 20% will be paid on the first ninety units sold. Walker-Davis contends that the first of these two provisions is essentially a "requirements" clause and obligates Publishers Resource to fulfill Walker-Davis' "requirements" to the satisfaction of Walker-Davis. The commission schedule is then interpreted as an indication that the sale of a minimum of 90 such units was expected each month.

■ This reading of the Contract is not persuasive. Publishers Resource's promise to solicit advertising and to devote "such time and efforts as required" is a typical example of a "best efforts" clause, such as would be implied into any exclusive sales contract even in its absence. *Wood v. Lucy, Lady Duff-Gordon,* 222 N.Y. 88, 118 N.E. 214 (1917). Nowhere does the Contract say that Publishers Resource will produce whatever *quantity* of advertising is required by Walker-Davis, the hallmark of a "requirements" contract.

■ The commission schedule, moreover, clearly constitutes a system of incentive payments. Any amount of advertising up to 90 units is to be recompensed at a rate of 20%; for amounts between 90 and 120 units, a 22% commission will be paid; and 25% is payable on amounts greater than 120 units. These provisions seem to suggest that 90 or fewer units were a normal or expected performance since an incremental commission is required to encourage efforts beyond that level. We think that it would be very difficult to read such schedules as committing Publishers Resource to any quota or level of sales.

Walker-Davis argues in the alternative that the Contract is at least ambiguous on this point and thus that the standard of performance upon which the parties agreed must be inferred from their conduct after the Contract was entered into. Walker-Davis presents various types of extrinsic evidence in support of its contention that the two parties agreed that Publishers Resource was required to solicit a minimum of 90 units of advertising each month. The evidence, consisting of correspondence between the two parties over the period of the Contract, in which Walker-Davis repeatedly urged Publishers Resource to sell more units of advertising, in fact proves little more than that the two apparently disagreed about whether Publishers Resource was doing a good job. The evidence proffered does not alter our conclusion that the Contract unambiguously contemplated that varying amounts of advertising would be solicited, including the possibility of quantities less than 90 units a month.

■ If the Contract does not establish a quota, Walker-Davis is entitled to rescind or repudiate it only for substantial nonperformance by Publishers Resource "so fundamental 'as to defeat the objects of the par-

---

2. A unit is one-ninth of one page of advertising in a tabloid size publication such as the magazine involved in this suit. A full page adver- tisement in such a publication would constitute nine units.

ties in making the agreement.'" *Maywood Sportservice, Inc. v. Maywood Park Trotting Association, Inc.,* 14 Ill.App.3d 141, 302 N.E.2d 79 (1st Dist.1973), *quoting Wright v. Douglas Furniture Corp.,* 98 Ill.App.2d 137, 143, 240 N.E.2d 259, 262 (1st Dist.1968). Walker-Davis presents a number of specific respects in which it contends Publishers Resource failed to represent it adequately. None of these rise to the level of "substantial nonperformance," absent the existence of an agreed quota or minimum level of sales. Annual sales figures, moreover, show that Publishers Resource continued to sell substantial amounts of advertising each year over the period 1975–1977 and, indeed, to increase the number of units sold each year.[3] Although Walker-Davis may have been dissatisfied with the amount of advertising sold, these figures do not, under any reasonable interpretation, represent substantial nonperformance justifying rescission. The only remedy provided by the Contract for such dissatisfaction is the termination of the agreement according to its terms. When Walker-Davis exercised the option on September 30, 1977, its action was therefore governed by the contractual provisions regarding termination.[4]

### III.

Having determined that Walker-Davis terminated the agreement with Publishers Resource according to the termination provisions contained in the Contract and not for cause justifying repudiation of the Contract, we must remand this case to the district court for a determination of damages according to those provisions. Publishers Resource is entitled, under the Contract, to "commissions on all advertising contracts in effect [within its exclusive territory] at the effective date of termination throughout the life of said contract up to a maximum of twelve (12) months from the effective date of termination."

This case is therefore reversed and remanded for a new trial on the question of damages.

REVERSED AND REMANDED.

---

3. The following chart is contained in appellant's brief and was prepared on the basis of testimony and exhibits presented at trial:

| Year | Units Sold by Publishers Resource | Units Sold by Other Walker-Davis Representatives |
| --- | --- | --- |
| 1975 | 663.2 | 1390.9 |
| 1976 | 757.8 | 1313.7 |
| 1977 | 783.9 | 1392.9 |

4. Walker-Davis raises other contentions, such as that the contract in suit is a personal service contract and thus was breached when Publishers Resource did not replace its original salesman with a similarly skilled salesman. We find these arguments lacking in merit.