[Cite as *Watershed Mgt. v. Neff*, 2014-Ohio-3631.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
PICKAWAY COUNTY

WATERSHED MANAGEMENT, LLC   :
                                                        :
          Plaintiff-Appellant,           :          Case No. 13CA20
                                                        :
          vs.                                        :
                                                        :          <u>DECISION AND JUDGMENT</u>
JOHN NEFF,                                  :          <u>ENTRY</u>
                                                        :
          Defendant-Appellee.         :          **Released: 08/18/14**

_____

<u>APPEARANCES:</u>

Michael N. Beekhuizen, Carpenter Lipps & Leland LLP, Columbus, Ohio, for
Appellant.

Richard T. Ricketts, Ricketts Co., LPA, Pickerington, Ohio, for Appellee.
_____

McFarland, J.

{¶1}  Appellant Watershed Management, LLC appeals the following
judgments, decisions, and entries of the Pickaway County Court of Common Pleas:

> (1)  The January 24, 2013 decision denying Appellant's motion for
> summary judgment;
>
> (2) The April 3, 2013 judgment entry following jury trial; and,
>
> (3) The July 31, 2013 decision and judgment entry denying
> Appellant's motion for judgment notwithstanding the verdict, or
> alternatively, for a new trial.

{¶2}  Having reviewed the record, we find as follows: (1) the trial court did

not err by denying Appellant's motion for summary judgment; (2) the trial court

did not err by its provision of jury instructions; and (3) the trial court did not err by overruling Appellant's motion for judgment notwithstanding the verdict or, in the alternative, motion for a new trial. Accordingly, we overrule Appellant's three assignments of error and affirm the judgment of the trial court.

## FACTS

{¶3} We recount the essential facts as previously set forth in this court's prior decision in *Watershed Management, LLC, v. Neff,* 4th Dist. Pickaway No. 10CA42, 2012-Ohio-1020, ¶ 3-¶16.[1] In 2005, Pickaway County completed the construction of a ditch near Caldwell Road. The purpose of the ditch was to divert water from the roadbed and prevent its softening. According to Douglas Kohli (Kohli), a district technician for the Pickaway County Soil & Water Conservation District (SWCD), the Caldwell Road project did not break watershed, or change the ultimate destination of the water. The ditch merely diverted water from the roadbed and directed it to its natural outlet, albeit via a faster route.

{¶4} However, John Neff (Appellee) believed otherwise. Appellee maintained that the ditch diverted water onto his land, creating drainage and erosion problems. Appellee voiced his concern and displeasure to the Pickaway County commissioners. In response, the commissioners consulted Kohli for a possible solution. Kohli suggested that Appellee and surrounding landowners

---

[1] In the prior appeal, Watershed Management was Appellee and John Neff was Appellant.

install grass waterways, which were grass-covered parabolic channels. Kohli explained the Natural Resources Conservation Service (NRCS) and the Farm Service Agency (FSA) administered programs that could reimburse landowners for up to 90% of the cost of constructing these waterways. The landowners would have to agree to maintain the waterways for a certain number of years, and the government, in addition to reimbursing most of the construction costs, would pay rental fees to the landowners as compensation for the tillable acreage the waterways replaced.

{¶5} Subsequently, Mark Ruff (Ruff), who farmed Appellee's land; Carl Hamman (Hamman), who was the owner and sole member of Appellant Watershed Management, LLC; and Appellee met. Ruff organized the meeting to suggest Appellee select Appellant as the contractor to construct the waterways. Ruff had worked with Appellant in the past and was familiar with the process, so he again outlined the process for constructing the waterways, obtaining reimbursement, and paying the contractor. Kohli would design the waterways and Appellant would construct them. Appellant would only charge Appellee the amount that the government would reimburse him – 90% of the estimated cost – plus additional fees for any extra materials or work that was required.

{¶6} Appellee agreed to have a waterway installed, though he did not sign a written contract. Appellee selected to upgrade the clay drainage tile for a portion

of the project, which meant that he would owe Appellant $1,900 above the amount the government would reimburse him for the waterways.

{¶7}  With all of the landowners agreeing to the waterways project, Kohli actually designed the waterways and Appellant began construction.  During construction, Kohli noticed that a span of nearly 400 feet of the waterway could potentially break watershed.  Breaking watershed would result in changes in peak water flow downstream, as well as increased erosion, which could subject the entities involved to litigation.  Additionally, Kohli knew that the Pickaway County Engineer's policy was not to break watershed, so Kohli amended the plans to avoid breaking watershed.  Kohli asked Appellant  not to complete the remaining 400 feet as a waterway, but to have the waterway stop short of its originally intended termination point and blend it into the landscape instead.

{¶8}   When the waterways were completed, Kohli examined them and certified they were constructed as designed and were working properly.  Kohli forwarded his plans and certification to the NRCS, which agreed with his assessments and approved and forwarded the plans to the appropriate authorities.

{¶9}  Prior to completion, Ruff sent a letter to each landowner, stating that they needed to meet with SWCD to complete additional paperwork and if there was a perceived problem with the waterway, they needed to address it immediately.  Ruff then sent out letters to the landowners, including Appellee,

explaining that Appellant would be sending them bills for the work completed. Ruff explained that the bill was only to be used for submission to the FSA, but there would also be a second bill with a negotiated balance, the amount the landowner would have to pay. Appellee never complained about the waterways to anyone involved, nor did he dispute the bill when Appellant presented it to him.

{¶10} To finalize the project and have the government reimburse him, Appellee purportedly completed the final paperwork, wherein he certified that the waterways had been constructed as designed and requested reimbursement for his costs. The government ultimately approved Appellee's request for reimbursement.

{¶11} Contrary to Kohli's certification that the waterways were working correctly, Appellee believed that they were not. Despite Kohli's concern for breaking watershed, Appellee believed that the waterways should have extended the additional 400 feet. Appellee also stated that there was a "lip," or "ridge," along the edge of part of the waterways that prevented portions of his fields from draining. Having these complaints, Appellee initially did not accept the government reimbursement checks, but finally acquiesced.

{¶12} Meanwhile, Appellant was at a loss as to why Appellee had not paid his bill, since Kohli and the NCRS had certified that the waterways were working properly, Appellee had apparently certified that they were built correctly, and the government had approved Appellee's reimbursement. Appellant also understood,

as did Kohli, that the waterways were designed to address erosion, not drainage, so Appellee's complaints were irrelevant. Thus, Appellant instituted litigation.

{¶13} During the dispute, Appellee sold his land to STEW Farm, Ltd. (STEW). STEW moved to intervene, arguing it had claims against Appellant, as the new owner of the allegedly defective waterways. The trial court denied STEW's motion to intervene, finding that the dispute between Appellee and Appellant concerned the contract to construct the waterways and STEW was unrelated to that transaction and had not demonstrated that it was entitled to intervene.

{¶14} Appellant then moved for summary judgment on its breach of contract and unjust enrichment claims. Appellant also sought dismissal of Appellee's counterclaims for breach of contract and breach of warranty because Appellee had presented no evidence that he had suffered damages. Finally, Appellant asked that the trial court find Appellee had withheld payment in bad faith, entitling Appellant to recover its attorney fees.

{¶15} Appellee countered that many factual issues remained unresolved, but also moved for summary judgment against Appellant on its requests for attorney fees and pre-judgment interest.

{¶16} The trial court granted Appellant's motion for summary judgment. Appellant then moved the court to issue a final judgment entry, which could

include compensatory damages for breach of contract, attorney fees, pre-judgment

interest, post-judgment interest, and costs.  Before Appellee's time to respond had

expired, the trial court granted Appellant's motion.  Appellee appealed the trial

court's rulings pertaining to summary judgment, the finding of bad faith, the

imposition of attorney fees, and the denial of STEW's motion to intervene, and the

calculation of costs.

{¶17}  On appeal, this court affirmed in part, reversed in part, and remanded

the case to the trial court.  Specifically, this court held:

> (1)  genuine issue of material fact as to whether grass waterways were
> constructed properly by contractor precluded summary judgment;
>
> (2)  issue of whether landowner acted in bad faith in withholding
> contractor's payment, as would support award of attorney fees to
> contractor, was jury question;
>
> (3)  claim preclusion did not preclude consideration of issues in
> instant action; and,
>
> (4) the trial court improperly granted contractor's motion for final
> judgment entry without permitting the landowner an opportunity to
> respond.

{¶18}  On remand, Appellant took the deposition of David Fox, (Fox) an

expert on behalf of Appellee.  The parties again engaged in motion practice, with

Appellant arguing Fox's opinions were not admissible and, in the absence of Fox's

opinions, the undisputed facts entitled Appellant to summary judgment in its favor.

The trial court denied Appellant's motion.

{¶19}  The matter commenced in trial on March 4, 2013.  The jury returned a verdict in favor of Appellee.  On April 17, 2013, Appellant filed a motion for judgment notwithstanding the verdict, or in the alternative, for a new trial.  The trial court denied Appellant's motion by entry dated July 31, 2013.  This timely appeal followed.

## ASSIGNMENTS OF ERROR

I. "THE TRIAL COURT ERRED WHEN IT DENIED WATERSHED MANAGEMENT'S DECEMBER 26, 2012 MOTION FOR SUMMARY JUDGMENT."

II. "THE TRIAL COURT ERRED WHEN IT GAVE JURY INSTRUCTION NOS. 2 AND 11."

III."THE TRIAL COURT ERRED WHEN IT DENIED WATERSHED MANAGEMENT'S APRIL 17, 2013 MOTION FOR JUDGMENT NOTWITHSTANDING THE VERDICT OR IN THE ALTERNATIVE MOTION FOR NEW TRIAL."

I.     "THE TRIAL COURT ERRED WHEN IT DENIED WATERSHED MANAGEMENT'S DECEMBER 26, 2012 MOTION FOR SUMMARY JUDGMENT."

## A. STANDARD OF REVIEW

{¶20}  "Appellate courts review summary judgments de novo." *Wells Fargo v. Phillabaum*, 192 Ohio App.3d 712, 2011-Ohio-1311, 950 N.E.2d 245, at ¶7, citing *Broadnax v. Greene Credit Service* (1997), 118 Ohio App.3d 881, 887, 694 N.E.2d 167 and *Coventry Twp. v. Ecker* (1995), 101 Ohio App.3d 38, 41, 654 N.E.2d 1327.  "In other words, we afford no deference whatsoever to a trial court's

decision, and, instead, conduct our own independent review to determine if summary judgment is appropriate." *Wells Fargo* at ¶7, citing *Woods v. Dutta* (1997), 119 Ohio App.3d 228, 233-234, 695 N.E.2d 18 and *Phillips v. Rayburn* (1996), 113 Ohio App.3d 374, 377, 680 N.E.2d 1279.

{¶21}  "Summary judgment is appropriate only when (1) there is no genuine issue of material fact, (2) reasonable minds can come to but one conclusion when viewing the evidence in favor of the nonmoving party, and that conclusion is adverse to the nonmoving party, and (3) the moving party is entitled to judgment as a matter of law." *Greene v. Seal Twp. Bd. of Trustees*, 194 Ohio App.3d 45, 2011-Ohio-1392,  954 N.E.2d 1216, at ¶9, citing *Doe v. Shaffer,* 90 Ohio St.3d 388, 390, 2000-Ohio-186, 738 N.E.2d 1243, *Bostic v. Connor* (1988), 37 Ohio St.3d 144, 146, 524 N.E.2d 881, and Civ.R. 56(C).

{¶22}  "The party moving for summary judgment has the initial burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law." *Greene* at ¶10, citing *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 292, 662 N.E.2d 264.  "The moving party must inform the trial court of the basis of the motion and must identify those portions of the record that demonstrate the absence of a material fact."  Id., citing *Dresher* at 293.  When seeking to have the nonmoving party's claims dismissed, "the moving party must specifically refer to the 'pleadings, depositions, answers to interrogatories, * * *

written stipulations of fact, if any,' that affirmatively demonstrate that the nonmoving party has no evidence to support [its] claims." Id., citing *Dresher* and Civ.R. 56(C). "If the moving party satisfies its initial burden, the nonmoving party then has the reciprocal burden outlined in Civ. R. 56(E) to set forth specific facts showing that there is a genuine issue for trial. If the nonmovant does not satisfy this evidentiary burden and the movant is entitled to judgment as a matter of law, the court should enter a summary judgment accordingly." Id., citing *Kulch v. Structural Fibers, Inc.* (1997), 78 Ohio St.3d 134, 145, 677 N.E.2d 308, citing *Dresher* at 295. "Mere speculation and unsupported conclusory assertions are not sufficient." *Hansen v. Wal-Mart Stores, Inc.*, 4th Dist. No. 07CA2990, 2008-Ohio-2477at ¶8, citing *Boulton v. Vadakin,* 4th Dist. No. 07CA26, 2008-Ohio-666, at ¶20.

## B. LEGAL ANALYSIS

{¶23} Appellant's motion for summary judgment argued there were no genuine issues of material fact because Appellee could not demonstrate a material breach of contract that would justify his refusal to pay Appellant. Appellant contended that the opinions of Appellee's expert Fox were baseless, irrelevant, inadmissible, and should be disregarded for purposes of summary judgment. Appellant argued if Fox's opinions were not admissible, the testimony that the waterways were in fact properly constructed is undisputed. Appellant also

emphasized that Fox did not offer any testimony regarded purported harm or damages suffered by Appellee.

{¶24} We begin by noting the admission or exclusion of evidence rests soundly within the trial court's discretion. *Holiday Properties Acquisition Corp. v. Lowrie,* 9th Dist. Summit Nos. 21055, 21133, 2003-Ohio-1136,¶26, citing *State v. Sage,* 31 Ohio St.3d 173, 180, 510 N.E.2d 343 (1987).  The trial court's decision concerning the admission or exclusion of evidence will not be reversed absent an abuse of that discretion. *Sage, supra* at 182, 510 N.E. 2d 343.  An abuse of discretion "connotes more than an error of law or of judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." *Lowrie, supra,* quoting *State v. Adams,* 62 Ohio St.2d 151, 157, 404 N.E.2d 144 (1980).  When applying the abuse of discretion standard, an appellate court may not substitute its judgment for that of the trial court.  *Lowrie, supra*, citing *Pons v. Ohio State Med. Bd.,* 66 Ohio St.3d 619, 621, 614 N.E.2d 748 (1993).

{¶25} Evid.R. 702, in pertinent part, provides that a witness may testify as an expert if all of the following apply:

> "(A) The witness' testimony either relates to matters beyond the knowledge or experience possessed by lay persons or dispels a misconception common among lay persons;
>
> (B)  The witness is qualified as an expert by specialized knowledge, skill, experience, training, or education regarding the subject matter of the testimony; and,

(C) The witness' testimony is based on reliable scientific, technical, or other specialized information...."

{¶26} Here, Fox's supplemental affidavit states he is the owner of Fox Den Construction, Inc. He has more than 25 years' experience as a contractor. Fox also states he has constructed grass waterways pursuant to the rules and regulations of all applicable governmental entities, including but not limited to the Farm Service Agency, the Natural Conservation Resource Services, and the applicable soil and water conservation district for the county in which the project was being completed. Specifically, Fox stated:

4. I have skill and expertise in the business of constructing grass waterways and am familiar with the process by which the Farm Service Agency, Natural Conservation Resource Services and/or the various Soil and Water Conservation District offices design, inspect, and approve grass waterways in connection with agricultural operations and government programs.

5. I have skill and expertise in the operation of lasers and other instruments and equipment used in connection with topographical mapping, grade elevations, and the construction of grass waterways. I own and have been properly trained to use the equipment that is used for these purposes.

6. I have personally inspected the grass waterways that are the subject of this litigation, specifically those located on the real estate owned by Stew Farm, Ltd.

7. I have personally taken laser measurements of the grass waterways that were constructed by the Plaintiff and are at issue herein.

8. The grass waterways that are at issue were not properly designed or constructed nor were or are they up to the standards by which grass

waterways should be constructed per the written specification of FSA and/or the Natural Resource Conservation Services.

{¶27} The construction of grass waterways relates to a matter beyond the knowledge and experience of lay persons. Fox's experience of actually constructing grass waterways is beyond the knowledge and experience of lay persons. Fox's knowledge is based on 25 years as a contractor. We conclude the trial court did not abuse its discretion in allowing the opinions of Fox to be considered for purposes of summary judgment.

{¶28} However, de novo review of the trial court's decision of the motion for summary judgment necessitates we review not only Appellant's argument about the admissibility of Fox's testimony, but also about whether or not summary judgment was otherwise appropriate. This court previously decided that there was evidence that the waterways were properly constructed and evidence that they were not. Appellee defended the motion for summary judgment, and responded by arguing, (regardless of the inclusion or exclusion of the Fox affidavit) that there were other genuine issues of material fact including:

(1) whether the waterways were timely and properly engineered and designed;

(2) what amount was to be paid for the construction of the waterways and to whom;

(3) whether Appellee executed certain documents at issue;

(4) whether Appellee received the benefit of his bargain with Appellant.

{¶29} Indeed this court's first decision explicitly stated:

"Thus, there is evidence the waterways were constructed properly, and evidence they were not. Whether Watershed properly constructed the waterways is material and determinative of whether Watershed performed its obligations under the contract, an element of its claim for breach of contract. Thus, there exists a genuine issue of material fact that precludes summary judgment on Watershed's claim for breach of contract and we sustain Neff's first assignment of error as it relates to this issue."

{¶30} At this juncture we note, that generally, the breach of one term in a contract does not discharge the parties' obligations under the contract unless the performance of that term is material to the purpose of the agreement. *Unifirst Corp.v. M.&J. Welding & Mach., Inc.*, 4th Dist. Scioto No. 95CA2401, 1996 WL 547948, *2; *Software Clearing House, Inc., v. Intrak, Inc.,* 66 Ohio App.3d 163, 170, (1st Dist.1990); *Kersh v. Montgomery Development Ctr.,* 35 Ohio App.3d 61, 62 (10th Dist.1987). The issue of whether a material breach of contract has occurred is a question of fact. *Bradley v. Pentajay Homes,* 4th Dist. Athens No. CA1458, 1991 WL 122853, *6, (citing Farnsworth, Contracts [1982] 612, Section 8,16); 6 Williston, Law of Contracts (3 Ed. 1962) 297 Section 866.

{¶31} In order to determine if an alleged breach was material, the factfinder must consider all of the circumstances of the particular case, including the conduct and relationship of the parties. *Unifirst, supra. Todd v. Heekin* (S.D. Ohio 1982),

95 F.R.D. 184, 186; 2 Restatement of the Law 2d, Contracts (1981) 237, Section 241. See, also, *Cent. Trust Co., N.A. v. Fleet Natl. Bank,* 1st Dist. Hamilton No. C-930162, 1994 WL 176912.  Furthermore, as noted in *Sahadi v. Continental Illinois Natl. Bank and Trust Co.* (C.A.71983), 706 F.2d 193, 196-197, the determination of materiality is often  a complicated question of fact that must be resolved with reference to the parties' intentions as evidence by the circumstances of the transaction. *Unifirst, supra.* See, also, *Wagner v. Flo-lizer Inc*., 4th Dist. Pike No. 407, 1998 WL 38868.  As such, the issue of materiality is normally inappropriate for resolution through summary judgment.  *Unifirst, supra*; *Sahad, supra*, at 197. Mere nominal, trifling, or technical departures will not result in a breach of contract; slight departures, omissions and inadvertencies should be disregarded. *Tucker v. Young,* 4th Dist. Highland No. 04CA10, 2006-Ohio-1126, ¶25; *Fitzpatrick v. Yeauger,* 4th Dist. Lawrence No. 97CA35, 1998 WL 379239, at *4; *Cleveland Neighborhood Health Serv., Inc., v. St. Clair Builders, Inc.,* 64 Ohio App.3d 639, 582 N.E.2d 640 (8th Dist.1989) citing *Ashley v. Henahan,* 56 Ohio St. 559, 47 N.E.573(1897).

{¶32}  This court found Appellant and Appellee entered into an oral contract.  Appellee was entitled to the benefit of the bargain that he contracted for, namely, properly constructed grass waterways. We agree with Appellee that genuine issues of material fact remained which precluded summary judgment.

Assuming for argument, the affidavit of Fox should have been excluded, the trial court still had affidavits from Appellee and Michael Struckman, the owner of STEW Farm Ltd., for consideration.

{¶33} In the supplemental affidavit of Appellee, he testified he was the former owner of the farm where the grass waterways subject of the litigation, are located. He testified the waterways were never properly constructed nor had they worked properly. He testified he was not provided with design or construction drawings for the waterways, he testified the main waterway did not extend the full distance it was supposed to run. He testified water pooled on the farm and there was a visible lip along the edge of the waterways that prohibits water from properly entering the waterways. He attached photographs to substantiate his claims.

{¶34} Appellee also testified the farming operations conducted on the farm did not materially alter the construction of the waterways and did not cause the defects in the waterways. He averred the waterways as constructed provide no value to the farm and resulted in the loss of tillable acreage and actual crop damage. He further testified the cost to repair the problems exceeded the contract amounts claimed by Plaintiff. Specifically, Appellee testified to the best of his recollection, he never signed paperwork that reflected his approval of the design or construction of the waterways.

{¶35} The trial court also had the supplemental affidavit of Michael E. Struckman which indicated (1) he had personal knowledge of the matters subject of the litigation, and (2) he had been involved in the construction of grass waterways on other farms and had personal knowledge of how they should be constructed. Struckman stated the grass waterways at issue were not properly constructed. He testified his knowledge of the construction of other waterways was that they were constructed pursuant to the same rules and regulations governing the ones at issue in the case. He testified the water pooled on the farm land because of a lip on a large portion of the edges of the waterways that prohibited draining. He also testified there are places where the waterways were constructed such that the water flowed in the wrong direction. Struckman opined that the farming operations conducted on the farm had not materially altered the waterways nor were farming activities or maintenance the cause of the problems/defects with the waterways or the source of the ponding and crop damage.

{¶36} Struckman's affidavit concluded that the improper construction of the waterways had damaged the farm and crops in adjoining fields on the farm. The affidavit attached photographs as evidence of the improper construction. He opined the waterways as constructed damaged the value of the farm and caused extensive financial damage to the crops planted on the farm. Struckman also averred he had

obtained two independent third party contractor quotes to repair the waterways to function properly and the cost to repair exceeded the amounts sought in the complaint by Plaintiff.

{¶37} Appellant consistently maintained a position that its only obligation was to construct the waterways according to Kohli's specifications. Appellant referenced Kohli's certification that the waterways were built as-designed, and the NCRS' additional certification that the as-built specifications met the applicable requirements and were properly constructed to demonstrate that it performed its obligations under the contract. However, the contract between Appellant and Appellee was an oral one. The determination of materiality, as we have previously noted, is often a complicated question of fact to be resolved with reference to the parties' intentions as evidenced by the circumstances of the transaction. *Unifirst, supra,* at *2. Appellee presented evidence as to what he understood the contract terms to be and evidence as to why he considered the waterways not to be properly constructed as he understood, per the oral agreement.

{¶38} Upon reviewing the affidavits submitted both for and against summary judgment, and construing the evidence most favorably on behalf of the non-moving party, we find that genuine issues of material fact remained to be litigated as to whether or not Appellant substantially performed its obligations under the contract and as to whether or not Appellee had a valid reason justifying

his failure to pay Appellant.  As such, we find the trial court did not err by denying

Appellant's motion for summary judgment.  Accordingly, we overrule Appellant's

first assignment of error.

II.    "THE TRIAL COURT ERRED WHEN IT GAVE JURY INSTRUCTION
NOS. 2 AND 11."
A.  STANDARD OF REVIEW

{¶39}  Generally, requested jury instructions should be given if they are a

correct statement of the law as applied to the facts in a given case.  *Terrago-Snyder*

*v. Mauro,* 7th Dist. Mahoning No. 08MA237, 2010-Ohio-5524, ¶48; *Murphy v.*

*Carrollton Mfg. Co.,* 61 Ohio St.3d 585, 575 N.E.2d 828 (1991).  The standard of

review when it is claimed that improper jury instructions were given is to consider

the jury charge as a whole and determine whether the charge misled the jury in a

manner affecting the complaining party's substantial rights.  *Columbus Steel*

*Castings Co., v. Alliance Castings Co., LLC,* 10th Dist. Franklin Nos. 11AP-351,

11AP-355, 2011-Ohio-6826, ¶15; *Dublin v. Pewamo Ltd.,* 194 Ohio App.3d 57,

2011-Ohio-1758, 954 N.E.2d 1225, ¶28, citing *Koitka v. Ford Motor Co.,* 73 Ohio

St.3d 89, 93, 652 N.E.2d 671(1995).  The discretion of the trial court will not be

disturbed on appeal absent an abuse of discretion.  *Columbus Steel Castings Co.,*

*supra*; *State v. Parnell,* 10th Dist. No. 11AP-257, 2011-Ohio-6564, ¶22.  An

inadequate instruction that misleads the jury constitutes reversible error.  *Columbus*

*Steel Castings Co., supra*; *Marshall v. Gibson,* 19 Ohio St.3d 10, 12, 482 N.E.2d

583 (1985).

{¶40} The Supreme Court of Ohio has quoted with approval the following

comment on jury instructions:

> " 'The fundamental rule for determining the scope of the instruction to
> be given by the court is that it should be adapted to and embrace all
> issues made by the pleadings and the evidence.* * *The instruction
> should be broad enough to properly cover the issues presented for
> consideration, or all the facts in issue which the evidence tends to
> establish or disprove.'" *Columbus Steel Castings Co., supra,* at 21,
> quoting *Murphy v. Carrollton Mfg. Co.,* 61 Ohio St.3d 585,591
> (1991), fn.3, 575 N.E.2d 828, quoting 89 Ohio Jurisprudence 3d,
> (1989), 354-355, Trial, Section 289.

## B.  LEGAL ANALYSIS

1. <u>Jury Instruction 2.</u>

{¶41} Appellant directs our attention to this instruction:

"This leaves for your decision disputed issues:

(4) Did the Defendant get any benefit from the work performed by the
Plaintiff…

However, if you find that plaintiff substantially performed the contract
and constructed the waterway in a good and workmanlike manner,
you will find for the plaintiff; unless the defendant has not met his
burden in proving his affirmative defense that he did not receive any
benefit from the work performed by the plaintiff."

{¶42} Appellant argues the above instruction is an incorrect statement of the

law.  Appellant cites this Court's prior decision that the only remaining fact issue

was whether the waterway was properly constructed.  Appellant argues it was not

required to show any "benefit" from the waterway and thus, this issue was not properly before the jury. Appellant concludes that these instructions were misleading and constitute reversible error.

{¶43} Appellee responds that Appellant is arguing the use of the term "benefit" out of context and Appellant actually raised the issue of "benefit" by arguing that Appellee had received the benefit of the government checks. Appellee asserts the issue of whether he received benefit was relevant to the jury's determination of whether or not Appellant properly performed the contract. Appellee points out his counsel used the word "benefit" multiple times in questions and Appellant never objected. Appellee argues the instructions reference to "benefit" was not material or prejudicial to the jury's decision.

{¶44} We agree with Appellee. Appellant's complaint alleged breach of contract. Appellee defended his case by arguing he was justified in refusing to pay Appellant because Appellant did not substantially perform the contract and thus, Appellee did not receive the benefit of his bargain. The jury considered whether Appellant substantially performed the oral contract and if Appellee had proved his affirmative defense that he did not receive any benefit. "Benefit," as defined by Black's Law Dictionary, (6th Ed. 1991) states:

> "When it is said that a valuable consideration for a promise may consist of a benefit to the promisor, 'benefit' means that the promisor has, in return for his promise, acquired some legal right to which he

would not otherwise have been entitled. 'Benefits' of contract are advantages which result to either party from performance by other."

**{¶45}** During the trial, the jury heard Appellee's testimony that after the Caldwell ditch project was completed, he had additional water on his farm. After the waterway was completed, however, the problems on the farm were worse. It was his understanding the waterways project was going to solve his problems, yet he "ended up worse." On redirect, Appellee testified he received no benefit from his agreement with Hamman or the work performed by his company. Appellee's farm did not benefit. On recross, Appellee was also questioned about his benefit from the government check of $19,000.00. In closing, Appellant's attorney argued Appellee actually benefitted when he was paid by the government but refused to pay Appellant and later sold his farm for $1.57 million dollars.

**{¶46}** Considering the testimony heard and the arguments made, along with the jury instructions in their entirety, we do not find Appellant was prejudiced or the jury was mislead by the trial court's inclusion of jury instruction two relating to "benefit."

2. Jury Instruction 11.

**{¶47}** Appellant also directs our attention to this instruction:

"Mr. Neff contends that the waterway was not properly constructed. In Ohio, there are two possible types of warranties in a contract. The first is the express warranty, arising from the terms of the oral contract; and the second is implied warranty, arising only from the fact than an agreement was made. Both may exist in the same

transaction.  If the plaintiff breached either type of warranty, the defendant may have remedies that will be discussed later.

If you find that a promise was made by one of the parties and the promise because a part of the basis of the bargain between the parties, then the agreement contains an express promise or warranty that the work will conform to the promise.

The plaintiff has made a promise about the quality of its work if, from the facts and circumstances in evidence, you find that a reasonable person in the position of the defendant would believe that the plaintiff had made a promise about the quality of its work.

It is not necessary that the promise or affirmation be the motivating factor of the bargain or is relied upon by the defendant; it is sufficient if the promise is one of the bases of the bargain.  If you find, however, that the defendant did rely on the promise, the promise would then be part of the basis of the bargain.

An express warranty may be formed by the promise whether or not the defendant knew the affirmation of fact was untrue or intended that the promise would be performed."

**{¶48}** Appellant points out Appellee asserted claims for breach of express and implied warranty in his counterclaim, which were dismissed by the trial court and affirmed by this court on appeal.  However, Appellee's request for jury instructions on express and implied warranties served only to mislead the jury regarding the actual issues in the case.

**{¶49}** Appellee responds the trial court properly instructed the jury that an implied warranty existed to perform the contract in a "workmanlike fashion" because this matter was still fully and properly before the court and the jury in the context of the proof of Appellant's performance of the contract and Appellee's

affirmative defense.  Appellee also points out he testified at trial that Appellant had made express representations to him that the waterway would be properly constructed and would be extended to a point well-beyond where it was actually constructed.

{¶50}  The common law imposes a duty upon builders and contractors to Perform their duties in a workmanlike manner.  *Sullivan v. Curry,* 2nd Dist. Montgomery No. 23293, 2010-Ohio-5041, ¶43; *Hanna v. Groom*, 10th Dist. Franklin No. 07AP-502, 2008-Ohio-765, ¶19.  See, also, *McKinley v. Brandt Constr. Inc.,* 168 Ohio App.3d 214, 859 N.E.2d 572, ¶10.  This implied duty requires construction professionals " 'to act reasonably and to exercise the degree of care which a member of the construction trade in good standing in that community would exercise under the same or similar circumstances.'" *Curry, supra,* quoting *Jarupan v. Hanna*, 173 Ohio App.3d 284, 878 N.E.2d 66, 2007-Ohio-5081, ¶9, quoting from *Seff v. Davis,* 10th Dist. Franklin No. 03AP-159, 2003-Ohio-7029, ¶19.

{¶51}  "The creation of an express warranty, as with any other contract, is determined by examining the intent of the parties to a particular sale and need not be expressed in written form in order to be valid." *Bales v. Isaac,* 2nd Dist. Greene No. 2003-CA-99, 2004-Ohio-4677, fn. 8, quoting *Enterprise Roofing & Sheet Metal Co. v. Charles Svec, Inc.*, 6th Dist. Ottawa No. OT-94-052, 1995 WL

326336; see also *Evilsizor v. Becraft & Sons Gen. Contractors, Ltd.,* 156 Ohio

App.3d 474, 478, 806 N.E.2d 614, 2004-Ohio-1306.  An oral express warranty is

governed by R.C. 2305.07. *Bd. of Education of Cleveland City School Dist. v.*

*Lesko & Assoc.,* 8th Dist. Cuyahoga No. 56592, 1990 WL 43640, *9.  (Also noting

R.C. 1302 concerns sales of goods and was, therein, inapplicable.)  Whether or not

a written express warranty is made is a jury question. *Id.* It would follow, likewise,

that whether or not an oral express warranty is made is also a jury question.

{¶52}  At trial, Appellee testified he had a verbal agreement with Appellant

to install the waterways.  He agreed there were essentially two problems with the

waterways project: (1) the waterway and tile should have been extended, and (2)

the area wasn't properly graded, which resulted in flooding damage.  The first

problem relates to an express warranty and the second issue relates to an implied

warranty of workmanlike construction.

{¶53}  As relates to the claimed express warranty, Appellee testified a

conservation plan created in August 2006 showed where the waterway would

extend. Appellee testified he was given no plans before the project was started. He

understood the waterway was supposed to run to a certain area and assist with

drainage, consistent with a process he had already started. (p. 309)  Appellee

testified no one ever told him the waterway was not going to be extended as far as

he thought.  He also requested tile be extended up through the area he thought the

waterway would be going. He understood the project would include an extension of waterway, continuing what he already had done and help with already existing tile. He also expected the tile to be oversized on the project. He asked specifically that the tile be oversized. All the above summarized his understanding of his agreement with Hamman. As it relates to the implied warranty of workmanlike construction and Appellee's claim that the waterways were not properly constructed, Appellee summarized the problem with the construction of the waterway as being that because the area was not properly graded, flooding damage had occurred.

{¶54} Based on the trial testimony, we do not believe the jury instructions on express or implied warranties were improper or misleading. The instructions simply adapted and embraced the issues emerging from the pleadings and conforming to the evidence adduced at trial. We find no merit to Appellant's argument regarding these instructions as well. As such, we overrule the second assignment of error.

III.    "THE TRIAL COURT ERRED WHEN IT DENIED WATERSHED MANAGEMENT'S APRIL 17, 2013 MOTION FOR JUDGMENT NOTWITHSTANDING THE VERDICT OR ALTERNATIVELY FOR A NEW TRIAL."[2]

A.  STANDARD OF REVIEW

---

[2] Appellant also argues in the event this court grants either judgment notwithstanding the verdict or a new trial on the breach of contract claim, it is also entitled to a new trial under Civ.R.59(A)(7) on its claim for attorney fees.

**{¶55}**  A motion for JNOV under Civ.R.50(B) tests the legal sufficiency of the evidence. *Pepin v. Hansing*, 4th Dist. Scioto No.13CA3552, 2013-Ohio-4182, ¶10 (Internal citations omitted.) ; see, *Eastley v. Volkman,* 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517 at ¶25 (a motion for JNOV presents a question of law); *Texler v. D.O. Summers Cleaners & Shirt Laundry Co.,* 81 Ohio St.3d 677, 679, 693 N.E.2d 271 (1998).  Thus, a trial court must construe the evidence most strongly in favor of the non-moving party and deny the motion when some evidence exists to support the non-moving party's case. *Pepin, supra.* See *Texler, supra* at 679, 693 N.E.2d 271; *Gladon v. Greater Cleveland Regional Transit Auth.,* 75 Ohio St.3d 312, 318, 662 N.E.2d 287 (1996); *Posin v. A.B.C. Motor Court Hotel, Inc.,* 45 Ohio St.2d 271, 275, 344 N.E.2d 334 (1976).  In doing so, a trial court may not weigh the evidence or judge witness credibility.  *Pepin, supra*; *Osler v. Lorain,* 28 Ohio St.3d 345, 504 N.E.2d 19, (1986), at the syllabus; *Ruta v. Breckenridge-Remy Co.,* 69 Ohio St.2d 66, 67-68, 430 N.E.2d 935 (1982).

**{¶56}**  A trial court must deny a motion for JNOV if substantial evidence exists upon which reasonable minds could come to different conclusions on the essential elements of the claim. *Pepin, supra* at ¶11;*Posin, supra* at 275, 344 N.E.2d 334; *Ramage v. Cent. Ohio Emergency Serv., Inc.,* 64 Ohio St.3d 97, 109, 592 N.E.2d 828 (1992).  Appellate courts then review a trial court's decision de novo.  *Pepin, supra*; *Hicks v. Garrett,* 5th Dist. Stark No. 2011CA109, 2012-Ohio-

3560, at ¶108; *Gindling v. Schiff,* 1st Dist. Hamilton No. C-100669, 2012 Ohio-764, at ¶14; *Britton v. Gibbs Associates,* 4th Dist. Highland No. 08CA9, 2009-Ohio-3943, at ¶7.

{¶57} Generally, the granting of a motion for a new trial rests in the sound discretion of the trial court and we will not reverse that decision on appeal absent an abuse of that discretion. *Tipton v. Goodnight,* 4th Dist.Gallia No. 05CA7, 2006-Ohio-113, ¶7; *Rhode v. Farmer*, 23 Ohio St.2d 82, 262 N.E.2d 685 (1970), paragraph one of the syllabus.

{¶58} "Civ.R. 59(A)(6) authorizes the trial court to vacate a judgment and order a new trial on a finding that the verdict on which the judgment was entered 'is not sustained by the weight of the evidence.'" When that claim is made, the court must review the evidence and pass in limited way on the credibility of the witnesses. (Internal citations omitted.) It must appear to the court that a manifest injustice has been done and that the verdict is against the manifest weight of the evidence…A verdict is not against the manifest weight of the evidence merely because the judge would have decided the case differently. (Internal citations omitted). If the jury's verdict is supported as to each element of the plaintiff's case by some competent and apparently credible evidence, a defendant's motion for new trial should not be granted. (Internal citations omitted). Conversely, if

evidence the defendant offered to rebut one or more of those elements of the plaintiff's case is competent and apparently credible, a plaintiff's motion should not be granted." *Pytel v. Crenshaw,* 2nd Dist. Montgomery No. 25487, 2013-Ohio-3552, ¶27, quoting *Bedard v. Gardner,* 2nd Dist. Montgomery No. 20430, 2005-Ohio-4196, ¶24.

## B.  LEGAL ANALYSIS

### 1.  Appellant's motion for judgment notwithstanding the verdict.

{¶59}  Appellant argues it is entitled to judgment notwithstanding the verdict on its breach of contract claim because Appellee argued at trial that the waterway did not extend the length that he had expected and that the waterway had lips or ridges.  Appellant argues on both issues, there was no evidence demonstrating it failed to substantially perform its obligation to construct the waterway in accordance with the government's specifications. Appellant points out that: (1) Kohli, not Appellant made the decision where to end the waterway; (2) the government inspected and approved the waterway twice after it was constructed. Appellant concludes there is no evidence of material breach because Appellee received exactly what he contracted for, a government waterway which met government specifications, and he has suffered no harm.

{¶60}  We observe the jury was instructed:

"Before you can find for Watershed Management, however, you must find by the greater weight of the evidence that Watershed

Management substantially performed its obligations to properly construct the waterway…Substantial performance means the absence of a breach by Watershed Management that violates a term essential to the purpose of the contract."

The court further instructed:

"The plaintiff has made a promise about the quality of its work, if, from the facts and circumstances in evidence, you find that a reasonable person in the position of the defendant would believe that the plaintiff had made a promise about the quality of its work. It is not necessary that the promise or affirmation be the motivating factor of the bargain or is relied upon by the defendant; it is sufficient if the promise is one of the bases of the bargain. If you find, however, that the defendant did rely on the promise, the promise would then be part of the basis of the bargain."

{¶61} Upon review, we conclude that Appellee adduced sufficient evidence for which a reasonable jury could conclude that plaintiff failed to substantially perform the contract. Appellee testified that under the terms of the oral contract with Appellant, the waterways and tile lines for the project were to be extended to a point in the field that was more than a thousand feet further to the east than the waterways and tile were actually installed. Appellee testified the end points of the waterways and the tile were significant and material aspects of the project. Appellee testified lips on the edges of the waterways were not appropriate and caused flooding damage to his property. He presented multiple pictures of the farm which demonstrated the existence of the lips. Appellee testified the lips existed from the time of the completion of the waterways.

{¶62} In closing, Appellee's counsel pointed out there was an oral contract, but the government plans were not made available to Appellee at the time he entered the contract. Appellee testified he never received a copy of the plans. He denied signing off and approving them. The plans were not consistent with Appellee's understanding of the terms of the oral contract. The waterway did not accomplish what he understood as the basis of his bargain. Appellant did not substantially perform the contract.

{¶63} Appellee's counsel argued the waterway work was commenced in spring 2006 and tile work was completed in mid-summer 2006. It was not until August 2006 that a conservation plan was prepared by the government- which should have been the start date for the project. Although the application form was dated October 4, 2006, work had begun on the site before the government had begun the process of approving it. Approval of the project was not until November 16, 2006, even though the work had been done and not effectively. Appellee's counsel emphasized the entire approval process was not complete until August 28, 2007. On September 19, 2007, a form was submitted to FSA, purportedly certified by Appellee. However, Appellee claimed he did not sign the form.

{¶64} Counsel's argument concluded the actual drawings, "the as-built" drawings prepared after the fact, reflected that the waterway or tile did not extend as Appellee expected, and that he was shorted by several hundred feet of tile.

Appellee's counsel pointed out because the waterway was not extended, the pictures showed it created a dam. Counsel argued the testimony and the pictures demonstrated the work was not done properly, and Appellee did not get what he bargained for. As such, he was justified in refusing to pay.

{¶65} Fox,[3] Struckman, Terry Weck, and Lloyd McManus also testified on behalf of Appellee. All witnesses identified their previous experience and knowledge of the construction of grassed waterways. Fox, Struckman, and McManus testified the waterways were not properly constructed.

{¶66} Terry Weck[4] testified he worked on Appellee's project in late May and June 2006. He installed the field tiles after the waterways were installed. Weck was advised there were no plans to be followed and he needed to establish his own survey for installing the tile. Weck testified the main waterway had a "fair amount" of slope to it. In the midst of installing the tile, he was informed by Kohli the point the tile was to stop was changed, "shortened up." Weck had been advised Appellee wanted the tile extended at least another 1,500.00 feet.

{¶67} Lloyd McManus[5] testified the normal process is the district technician would provide the landowner with a copy of the engineering drawings. He testified the district technician usually goes to the field and does a "lay out."

---

[3] Fox's background, experience, and opinions have previously been discussed within our resolution of assignment of error one.

[4] Weck testified he has worked on farm and drainage excavation projects since 1999. He has worked for Pickaway County and Watershed Management, LLC.

[5] McManus testified he previously worked for the Pickaway County Soil and Water District for 30 years as a district technician. He is familiar with the procedure for approval and construction of grassed waterways.

They set up flags which the contractor uses to make sure the waterway is constructed in accordance with the plans. After the waterway is approved, the contractor prepares a seed bed, applies fertilizer, seed, and mulch.

{¶68} McManus testified a 6-part folder is kept in the ordinary course of business and is in the landowner's file.[6] McManus explained the "as built" construction check is done in the field. The "as built" changes are done in the office, after doing the construction check in the field.

{¶69} McManus testified he previously had difficulty with Appellant following the required specifications and guidelines. He did not want to work with Appellant because he felt Hamman did not try to follow the standards and specifications. He disagreed with the way Appellant timed the seeding. He testified Appellant would start projects before the engineering had been completed-before the 6-part folder and drawings were completed. McManus testified this was not in accordance with government specifications nor was it part of standard operating procedure.

{¶70} On cross-examination, McManus acknowledged he "didn't get along that well" with Hamman. He acknowledged he was put on probation by Pickaway County Soil and Water. McManus testified he was on the construction checks and does not think certain things were completed on Appellee's project. On recross,

---

[6] McManus explained that "as built" is when "you take a set of drawings, and if there are any changes, you make changes on the plan. If you had job approval, then you sign off on the plan and put "as built" on the drawings if it was completed, and if it was completed satisfactorily to the standards and specifications."

McManus admitted Kohli was the one solely responsible for certification of the project.

{¶71}  Struckman testified when he purchased the farm from Appellee, he received the monies that were issued by the government so he could deal with Hamman on the waterways' issues. He testified the waterways were not properly constructed and had lips or ridges.  Struckman opined Appellee did not get any benefit from the governmental monies.

{¶72}  Appellant's case hinged on the testimony of Hamman,[7] Kohli, and Ruff.  Kohli[8] testified he became involved Appellee after a dispute as to a drainage ditch on Caldwell Road.  Appellee was looking for a solution.  He went to the county commissioners.  The commissioners asked Kohli to attend the meetings and talk with Appellee.  Kohli indicated Appellee could be helped through the agricultural programs if he could get other landowners to sign up at the same time.  Each owner would have an individual project, but the design would connect them to fit together.  The main objective was for erosion control, not drainage.  Kohli met with Appellee and he seemed to be in favor.

---

[7] Hamman testified he has been in business installing grass waterways since 1993.  He estimated he has intstalled millions of feet of grass waterways.  He is familiar with the government programs that subsidize installation of waterways. The government designs the waterway and a contractor installs it according to the government specifications.  After it is completed, it is inspected by either NCRS, the Soil and Water Conservation Districts, or both.

[8] Kohli testified as district technician, he assists landowners and farmers with conservation on their lands.  He performs surveys, designs and develops plans for engineering conservation practices.  He has been involved with approximately 200 waterway projects in his job as district technician. The NCRS designs the grass waterways.

{¶73} Kohli discussed the scope of the project with Appellee. He designed the waterway with a specific plan. The purpose of the waterway was to convey surface water from some of the lands without excessive erosion. Kohli testified there was flooding on Appellee's property prior to the waterway being installed. The waterway was not intended to correct the flooding on Appellee's land. He does not know why Appellee never received a 6-part folder with the construction drawings. Kohli approved the design drawings October 6, 2006. Sue Lumley initialed them.

{¶74} Kohli gave his plans and designs to Appellant. He monitored the project when the work started. Kohli's work began in spring 2006 and Appellant completed its work in spring or early summer 2006. He was on-site twice. He inspected the waterways when completed. He concluded the waterways met with the plans and specifications. He did not sign the plans to show inspected until after it was seeded. Kohli identified his signature on the as-built plans, dated March 14, 2007. After the waterway was completed, the landowner was responsible for maintaining it.

{¶75} Kohli testified the originally designed plans were to go around the corner.[9] Appellant stopped the waterway at the surface inlet, which would have

---

[9] Kohli further explained there was a huge pot hole, 3-5 acres at the far east end of Appellee's farm right behind a barn. When the original channel was made, he was told to drain the pot hole. Kohli did not feel that was the right direction to go. He felt it would break watershed, change the whole dynamics, and could

been roughly an additional 450 feet up and around the bend. The tile would have been extended to that point also. Kohli testified the change was not his request, it was a misunderstanding.[10]

{¶80} Hamman testified Kohli designed the waterway and Appellant used the government plans. Hamman testified the purpose of the waterway was to convey water off the field without causing erosion. According to Hamman, the terms of the agreement were that he would install the waterway and he would not be paid until Appellee was satisfied and signed off on the government payment, and that the tenant was satisfied. Hamman was supposed to be paid approximately $20,000.00. Hamman testified as part of the agreement, he would install tile one size larger and the government would reimburse, on the tile, what they thought to be appropriate. The purpose of the upgraded tile was to drain the waterway. As part of the agreement with Appellee, the government would issue the check. Ruff would do the seeding, fertilizing, and tiling of the waterway.

{¶81} The waterways project was completed in fall 2006. Hamman testified his company did not complete the final 400 feet of the waterway as originally designed. Hamman testified NRCP signed off on the project. Hamman

result in damage. Appellee wanted to have the waterway extended in that area. Kohli did not want to be responsible for that.

[10] There are penciled in changes that reflect changes from the original plan. Kohli acknowledged the plans he approved for the project had the waterways and tile ending at least four hundred feet short of the terminus point under the plans.

identified "as built" plans, signed by Dan Garver in August 2007. [11] Hamman also identified plaintiff's Exhibit 20, a form which indicated what the landowner would receive as part of the government program. The exhibit indicated Appellee had signed and dated the form.

{¶82} Hamman could not recall when he first received the plans. He did not recall whether the tile or land-forming came first. He does not recall how soon after April 10, 2006 the project started. In response to a question that he did not install the tile as requested or required by the design, Hamman responded he stopped where Kohli told him to stop. On redirect, Hamman explained Kohli instructed them to stop short of the original plan because he felt if the waterway went further, it would go into another watershed area.

{¶83} In closing, Appellant argued the only issue was if the waterway was properly constructed. Appellant highlighted there was no dispute on how the government program worked. The waterway was installed for the purpose of erosion control. Appellant argued the evidence showed Kohli designed the waterway and determined the scope of the project.

{¶84} Appellant's counsel also referenced the exhibits in closing. He pointed to the plans showing the dates for the project; the NCRS form Dan Garver certified; the letter from Garver to Appellee telling him he will be certifying it; the

---

[11] The plans and waterways were inspected by Kohli, Sue Lumley, and Dan Garver.

AD-245 form purportedly signed by Appellee which certified Mr. Appellee's approval and bearing of expenses to the government; and the checks issued to Appellee. Appellant argued that Watershed Management substantially performed the contract and properly constructed the waterway because it was inspected and approved twice.

{¶85} Appellant's counsel discredited Appellee's witnesses, especially David Fox, about the lips or ridges on the waterway. He argued Fox was not a credible witness because he was not familiar with the government standards for a waterway, he didn't look at the government plans, and he inspected the waterway in August 2010, 4 years after the waterway project was completed. Appellant concluded Appellee's excuse for nonpayment was not reasonable and Appellee was motivated by anger at local government officials.

{¶86} Construing the evidence most favorably to the non-moving party, Appellee's case, there is some evidence to support Appellee's claim that he did not receive the benefit of his bargain - that the waterways did not extend the length he believed they would extend, and that the construction of the waterways caused flooding damage to his property. In this case, Appellant testified as to what he understood the terms of the oral contract to be. He provided witnesses who testified the waterways were not constructed properly. He provided some evidence to support his claim that he was justified in not paying Appellant for the work

performed.  Based upon our de novo review, we find the trial court did not err in denying Appellant's motion for judgment notwithstanding the verdict.

2.  <u>Appellant's motion for a new trial pursuant to Civil Rule 59(A)(6).</u>

{¶87}  Appellant contends the evidence discussed above demonstrates the verdict was not sustained by the weight of the evidence and Watershed Management is entitled to a new trial on its breach of contract claim.  Based on our analysis set forth above, we conclude the evidence Neff offered to explain why he did not pay for the work performed by Appellant is competent and credible.  We do not find the jury verdict reflects a manifest miscarriage of justice.  As such, we find the trial court did not err in denying the motion for new trial.

{¶88}  Accordingly, Appellant's third assignment of error is also overruled.  As such, we affirm the decision of the trial court.

**JUDGMENT AFFIRMED.**

# **JUDGMENT ENTRY**

It is ordered that the JUDGMENT BE AFFIRMED and that the Appellee recover of Appellant any costs herein.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Pickaway County Common Pleas Court to carry this judgment into execution.

Any stay previously granted by this Court is hereby terminated as of the date of this entry.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Abele, P.J. and Hoover, J.: Concur in Judgment and Opinion.

For the Court,


BY:  _____
Matthew W. McFarland, Judge



## NOTICE TO COUNSEL

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**